LUKE H. TAFT & another, executors, *vs.* EMELINE N. TAFT
& others.

EMELINE N. TAFT *vs.* LUKE H. TAFT & others.

Worcester.    April 2, 1895. — May 22, 1895.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Will — Ante-nuptial Agreement — Real Action — Jointure — Dower — " Distributive share " of Personal Estate.*

If the provisions in a will in favor of the testator's wife are not intended to
be a substitute for her rights under an ante-nuptial agreement, she is not, by
accepting the provisions of the will, precluded from claiming also under the
agreement.

THE FIRST CASE was a bill in equity by the executors of
the will of Moses Taft to obtain the instructions of the court
as to the construction of the will and of the ante-nuptial agreement between the testator and Emeline N. Taft.    Hearing before *Lathrop*, J., who reserved the case upon the bill and answers
for the determination of the full court.    The material facts appear in the opinion.

THE SECOND CASE was a writ of entry to recover one undivided sixth part of one undivided half of a lot of land with a
building thereon in Uxbridge.    Plea, *nul disseisin*.    The case
was submitted to the Superior Court, and, after judgment for
the demandant, to this court, on appeal, upon agreed facts, the
nature of which appears in the opinion.

*H. M. Knowlton*, for the residuary legatees under the will of
Moses Taft.

*W. S. B. Hopkins & F. B. Smith*, for Emeline N. Taft.

ALLEN, J.    The principal question presented by these cases is,
whether the provisions in the testator's will in favor of his wife
were intended to be a substitute for her rights under the ante-nuptial agreement, so that by accepting the provisions of the
will she is precluded from claiming also under the agreement.

By the ante-nuptial agreement, which was dated December 12,
1857, she was to continue to have and to hold all of her own
estate, real and personal, after the marriage, and also such other

estate as she might subsequently acquire in her own right; and in case he should survive her, all of the above was to descend to her child or children. In case she should survive him, she was to be endowed in one half part only of his real estate; that is, her dower was to be one sixth part only instead of one third part of his real estate; and she was to receive one sixth part only instead of one third part as her distributive share in his personal estate. She was also to release her rights of dower and homestead in case he should wish to convey real estate during coverture; and in case his heirs or other persons interested in his real estate after his death should wish to do so, she was to release her rights of dower and homestead on receiving a just equivalent therefor. This ante-nuptial agreement was not to apply to any house in which they might live at the time of his decease.

There is nothing to show what amount of property she owned then, or at any time thereafter. He died April 2, 1893. His property had largely increased during their life as husband and wife, and after his death it was appraised as follows: personal property, $309,250; homestead, $9,000; other real estate, $6,800; being in all, $325,050. His debts were from $3,000 to $5,000.

The residuary legatees, who are children and grandchildren of the testator, contend that she has no such present interest in the real estate other than the homestead as to enable her to maintain a real action, because the contract does not amount to a jointure. The contract, however, does not purport to bar her right of dower wholly, but cuts it down one half. She surrendered one half of her right of dower in all real estate he might die seised of except the homestead. The agreement does not create an estate in her. The law creates the estate, which by the agreement she gave up, to the extent of one half.

They further contend that under the agreement she takes no interest in the personal estate, because the words used are that she shall receive one sixth part only, instead of one third part, as her "distributive share" of his personal estate; that the words "distributive share" in their legal meaning relate only to an intestate estate, or to an estate made intestate as to a widow by her waiving the will; that this is not an intestate estate in either sense; and therefore that the contract gives her

no right to any portion of his personal estate. Such we understand to be the contention in behalf of the residuary legatees. But this is too strict and technical a construction of the words used. The meaning is, that she shall receive one sixth part of his personal estate.

In view of the contract, then, taken by itself alone, she would now be entitled to dower in the homestead, to a life interest in one sixth part of the rest of his real estate, and to one sixth part of his personal estate. Her share of the personal estate would amount to $51,541.67.

If there were no ante-nuptial agreement and no will, she by law would be entitled to dower in all of the real estate, and to one third part of the personal estate, which one third would amount to $103,083.33.

Mr. Taft's will is dated February 23, 1886. The value of his property at that date is not given. The will makes no mention of the ante-nuptial agreement, but gives to " my beloved wife " the use of the homestead for life; the furniture, etc., of the value of $1,000; the sum of $5,000; and an annuity of $1,200 during her life. To raise this annuity would require the holding of $30,000, reckoning the income at four per cent, which counsel on both sides assume to be a reasonable rate.

It is apparent that if the provisions for her in the will are held to supersede the ante-nuptial agreement she will get materially less than by the agreement, estimating the property at its appraised value after the testator's death.

There is no intimation in the will that its provisions were intended to supersede the agreement. He could not cut down her rights under the agreement without her consent. We find nothing in the circumstances to show an intention of asking her consent to any reduction or change of her rights under the agreement. It seems probable, rather, that with the increase of his property he wished to do more for her comfort and enjoyment during life. To this end, he gave her outright $5,000 in money, and furniture of the value of $1,000; the use for life of the homestead, instead of her dower therein; and what practically amounts to the income of $30,000 during her life. His own descendants will ultimately get the whole of this property except the $5,000 in money and the furniture. And even with

the addition of these provisions in her favor to her rights under the agreement, she will get less from his estate than she would have got if there had been no agreement and no will.

The result is, that she has the right to take what is given to her by her husband's will, in addition to what she is entitled to receive under the ante-nuptial agreement. She is entitled to judgment in the real action; and in the petition of the executors, instructions will be given in accordance with this opinion.

*Ordered accordingly.*