HERBERT P. BAKER, executor, &c.,

*v.*

E. SOPHIA BAKER.

[Decided July 11th, 1913.]

1. A testator devised to his wife the use of his dwelling-house and lot of land whereon the same was erected and directed, "that in case said house shall be destroyed by fire, wind or otherwise become untenantable, I direct my executor to pay to my said wife thirty dollars ($30) a month until said house is rebuilt or put in tenantable condition and occupied."—*Held*, that she is under the obligations of a life tenant and may not permit the premises to fall into a state of non-repair and claim thirty dollars ($30) per month until the repairs shall have been made by the executor, and that it is not his duty, but hers, to keep the premises in repair and to pay the taxes.

2. In the construction of the words "or otherwise become untenantable" the doctrine *ejusdem generis* must be applied, which is to the effect that where general words follow particular ones the rule is to construe them as applicable to persons *ejusdem generis*.

3. Where a statute or other document enumerates several classes of persons or things, and immediately following and classed with such

enumeration the clause then embraces other persons or things, the word "other" will generally be read as "other such like," so that the persons or things therein comprised may be read as *ejusdem generis* and not with a quality peculiar to or differing from those specifically enumerated.

4. When the testator used the words "or otherwise become untenantable" he had in mind the destruction of the building by some superior force or *vis major*, of the kind that fire and wind belong to, or in other words, destruction of the buildings by the elemental forces.

On final hearing on bill, answer, replication and proofs.

*Mr. Sidney W. Eldridge* and *Mr. Clark McK. Whittemore,* for the complainant.

*Mr. Patrick H. Gilhooly,* for the defendant.

HOWELL, V. C.

The pleadings and proofs in this case show that on August 3d, 1909, Abram P. Baker died seized of a tract of land in the city of Elizabeth, on a portion of which was a dwelling-house, the remainder being occupied for other purposes. He left a will, dated March 10th, 1900, and a codicil thereto, dated February 20th, 1907, both of which were admitted to probate, and in and by which he made the following provisions:

"*Fifth.* I direct that my beloved wife, Sophia E. Baker, shall have the use of the house in which I now (1900) reside. together with the lot on which it stands, being thirty feet front and rear by one hundred and fifty feet deep, and adjoining the property of William C. Tubbs, for the term of her natural life, provided she does not again marry; in case of her remarriage all her rights under this bequest shall terminate and cease. After the death or marriage of my said wife I give and devise and bequeath the same to my son Herbert P. Baker, his heirs and assigns forever. The above bequests to my said wife are in lieu of dower or thirds in my estate.

"*Second.* In and by the fifth clause of my said will I did give and bequeath to my wife E. Sophia Baker the use of the house and lot on Cherry street in Elizabeth, N. J., in which I resided in the year nineteen hundred; I do now direct that in case said house shall be destroyed by fire, wind, or otherwise become untenantable, I direct my executor to pay to my said wife thirty dollars a month until said house is rebuilt or put in tenantable condition and occupied."

These provisions were declared to be in lieu of dower. After the death of the testator his widow entered into possession of the property so devised to her and rented the same; she has been in receipt of the rents from his death hitherto and has paid some of the charges incident to her possession of the premises as if she were a life tenant. She has permitted the property to fall into a condition of disrepair, so that the second floor of the house is not now rented. The first floor is rented for a very small amount and not for a sum which it would rent for if the property was put in a tenantable condition. At the time of the death of the testator the property was renting for $30 a month.

The executor now files his bill, alleging that the property is in a state of disrepair and that it is the duty of the defendant as life tenant to keep the same in good condition and repair and pay all the taxes and other municipal charges levied against it; that she has allowed the premises to fall into disrepair to such an extent that they are hardly tenantable for the class of tenants which reside in the neighborhood, and he describes the condition of the building quite fully and insists that the defendant is under obligation to keep the premises in repair and pay all the taxes assessed against them, and that she is obligated in the same manner as any other life tenant.

She responds that she is excused from making repairs by the terms of the codicil, which provide that in case the said house should be destroyed by fire, wind, or otherwise become untenantable, the executor should then pay to her $30 a month until the house should be rebuilt or put in tenantable condition by him and occupied.

The difficulty arises out of the use of the words "or otherwise become untenantable" in the second item of the codicil. The defendant insists that she is not under the obligations of a life tenant and that she may permit the premises to fall into a state of non-repair and claim $30 per month until the repairs shall have been made by the executor, and that it is his duty and not hers to keep the premises in repair and to pay the taxes.

In my opinion, in the construction of these words, the doctrine of *ejusdem generis* must be applied. That rule was well expressed by Lord Tenterden in *Sandiman* v. *Breach, 7 B. & C.*

*99.* He says: "Where general words follow particular ones the rule is to construe them as applicable to persons *ejusdem generis.*" It is, therefore, sometimes called Lord Tenterden's rule, which, as to the word "other," may perhaps be more fully stated thus: "Where a statute or other document enumerates several classes of persons or things and immediately following and classed with such enumeration, the clause then embraces other persons or things the word 'other' will generally be read as 'other such like,' so that the persons or things therein comprised may be read as *ejusdem generis* and not with a quality peculiar to or differing from those specifically enumerated."

The doctrine is well illustrated by the case of *Saner* v. *Bilton, 7 C. D. 815; 47 L. J. Ch. 267.* There the lease contained this provision:

"That in case the said warehouse and building or any part thereof respectively shall at any time during the said term be destroyed or damaged by fire, flood, storm, tempest or *other inevitable accident,* then the said yearly rent hereby reserved or a just proportion thereof shall cease or abate, so long as the premises shall continue wholly or partially untenantable or unfit for use and occupation in consequence of such destruction or damage."

During the term a beam broke, the walls bulged and other defects appeared in the building. The landlord made repairs and sued the tenant for the amount thereof. Mr. Justice Fry held that the phrase "other inevitable accident" used in the lease was one of a kin to flood, fire, storm or tempest referred to in the immediately preceding words, and that the injury sustained to the building was not inevitable accident, within the meaning of these words. Later on came the case of *Manchester Bonding Warehouse Co.* v. *Carr, 5 C. P. D. 507; 49 L. J. C. P. 809.* There a tenant covenanted to deliver up the leased premises at the end of the term, damage by fire, storm or tempest or other inevitable accident and reasonable wear and tear only excepted. The building fell during the term, and the question was whether the phrase "other inevitable accident" included the fall of the building. It was held that it did not, and that the "inevitable accident" referred to meant mere accident *ejusdem generis,* and did not extend to the use of the property by the

tenant. The case was decided upon the authority of *Saner* v. *Bilton, supra.* To the same effect is the case *In re Richardson et al., 66 L. J. Q. B. 868.* The American cases cited in the complainant's brief are generally on the same line. *Sims* v. *United States Trust Co., 103 N. Y. 472; Donley* v. *Bank, 40 Ohio St. 47.*

It is said that care must be taken in the application of the doctrine to the construction of wills, and that the best rule for the construction of such documents is that which takes the words to comprehend a subject that falls within their usual sense, unless there is something like a declaration plain to the contrary. *Parker* v. *Marchant, I. Y. & C. 290; 11 L. J. Ch. 223,* the reason being that in the constructions of a will the words should be held to their plain, common, ordinary meaning. While this must be true, so far as the donative words of a will are concerned, yet when a construction is sought of testamentary words that are not purely donative, I see no reason why the doctrine should not be invoked.

I am, therefore, of opinion that when the testator used the words "or otherwise become untenantable," he had in mind the destruction of the building by some superior force or *vis major,* of the kind that fire and wind belong to, or, in other words, destruction of the buildings by the elemental forces.

Unless the meaning of the words in question can be confined within the limits above indicated, it would be possible for the defendant by her own act to permit spoliation and waste to such an extent as to make the premises untenantable, and then as a result of her own act call upon the executor to pay the monthly stipend provided for by the codicil until he should rebuild the premises or put them in condition where they could be rented. I do not think that the testator meant to absolve his widow from the usual duties and obligations attending a life tenancy. If he had meant that it would have been very easy for him to have expressed it. He put her to her election whether she would take dower or the testamentary provision. If she had elected to take dower she would have been bound to pay taxes and keep the buildings in repair, and I am driven to the conclusion that the testator meant by the provisions of his will in her favor to

put her under the same obligation. The result is that unless the widow shall put the premises in proper repair, a receiver of the rents will be appointed according to the common practice.