MOLLIE I. REDDING, A WIDOW; THOMAS J. REDDING, JR., BLANCHE REDDING PHILLIPS AND HUSBAND, M. P. PHILLIPS; IDA REDDING DAUGHERTY AND HER HUSBAND, J. W. DAUGHERTY; NELLIE REDDING FENNELL AND HUSBAND, J. M. FENNELL; W. C. REDDING AND CARL H. REDDING, A MINOR, *Appellants*, v. BANK OF GREENVILLE, *Appellee*.

### En Banc.

### Opinion Filed July 23, 1926.

Where the members of the appellate court are equally divided in opinion as to whether an order on appeal should be reversed or affirmed, and there is no prospect of a change of judicial opinion the order should be affirmed, so that the litigation may not be unduly prolonged.

An Appeal from the Circuit Court for Madison County; M. F. Horne, Judge.

Affirmed.

*H. E. Carter*, for Appellants;

*Chas. E. Davis*, for Appellee.

PER CURIAM.—In this case the Chief Justice, Mr. Justice Terrell and Mr. Justice Strum are of opinion that the order appealed from should be reversed, while Mr. Justice Whitfield, Mr. Justice Ellis and Mr. Justice Buford are of opinion that the order should be affirmed; and there being no prospect of a change of judicial opinion, the order should be affirmed on the authority of State *ex rel.* Hampton v. McClung, 47 Fla. 224, 37 South. Rep. 51; State *ex rel.* Amos v. Hamway, 87 Fla. 55, 100 South. Rep. 796.

Affirmed.

All concur.

ELLIS, J.—The appellee brought its bill for the partition of certain lots in the town of Greenville, in Madison County, against Mollie I. Redding and others, who are appellants here.

The defendants answered and the complainant moved to strike certain portions of the answer. The chancellor granted the motion. From that interlocutory order the defendants appealed.

The point presented involves a construction of certain clauses of the will of Thomas J. Redding, Sr., deceased, who was the husband of Mollie I. Redding and the father of Thomas J. Redding, Jr.; Blanche Redding Phillips; W. C. Redding; Carl H. Redding; J. W. Redding; Nellie Fennell and Ida Redding Daugherty. There was also a daughter named Mamie Redding Nicholson. She died before her father, leaving surviving her L. L. Nicholson, Sr., her husband, L. L. Nicholson, Jr., and Mary Elizabeth Nicholson, minor children.

Thomas J. Redding, Sr., at the time of his death knew of the death of his daughter Mamie Redding Nicholson. He died seized and possessed of the certain lots in the town of Greenville which were described in the bill and certain other lots in the town. He also left personal property and life insurance policies in the sum of ten thousand dollars payable to three of his children by his first wife; J. W. Redding, Nellie Fennell and Ida S. Daugherty. His death occurred October 19, 1921.

To his wife, Mollie, and his children, Thomas J. Redding, Blanche Redding, W. C. and Carl H. Redding, he devised the certain other lots. The lots described in the bill were devised to his "wife and children share and share alike." The will, omitting a description of the other lots devised to his wife, Thomas J., Blanche, W. C. and Carl H. Redding is as follows:

"I, Thomas J. Redding, of Greenville, Madison County, Florida, being of sound and disposing mind and memory and mindful of the uncertainty of life, do make, ordain, publish and declare this to be my last will and Testament, hereby revoking all former wills by me at any time heretofore made.

"Item I.   I direct that all my just and lawful debts and obligations be fully paid and discharged as soon as possible after my death.

"Item II.   I give and bequeath to my wife, Mollie I. Redding, all of the furniture, books and pictures, provisions and all household effects of every kind and character, which I may own at the time of my death which shall or may be in, about or belonging to the house in which I may be residing at the time of my death. And I also give and bequeath to my said wife the sum of One thousand, two hundred and fourteen ($1,214.00) dollars in lawful money of the United States of America.

"Item III.   WHEREAS, I have already insured my life in the sum of Ten Thousand ($10,000.00) dollars in five separate policies of Two Thousand ($2,000.00) dollars each, all payable to my three children by my first wife, namely:   J. W. Redding, Nellie Fennell and Ida S. Daugherty and their heirs and assigns; Now therefore, with a view to and by way of equalizing the participation of my other children in the division of my property, I give and bequeath to each of my other said children, namely: Thomas J. Redding, Jr., Blanche Redding, W. C. Redding and Carl H. Redding the sum of One Thousand, Two Hundred and Fourteen ($1,214.00) Dollars in lawful money of the United States of America.

"Item IV.   I give and devise the following described real property, to-wit: * * * to my wife, Mollie I. Redding, and my children Thomas J. Redding, Jr., Blanche Redding,

W. C. Redding and Carl H. Redding, share and share alike. Provided, however, that should either my wife or any one or more of my children mentioned in this Item die before my death, then and in that event the share or shares or interest or interests of such deceased one or ones in and to the property above described in this Item shall go to and vest in my other surviving children, share and share alike.

"Item V.   And the residue or remainder of all property of every kind and description, whether personal, real or mixed, that I may own at the time of my death, I give, bequeath and devise to my said wife and children, share and share alike.

"Item VI.   I have advanced to my son J. W. Redding the sum of Four Thousand, One Hundred and Sixty-two and 05/100 ($4,162.05) dollars on account of and against whatever may be coming to him from my estate by way of inheritance or under will; and this amount I want and direct to be deducted from his distributive. share under this my will.   And I have also advanced to my daughter, Ida S. Daugherty, the sum of One thousand, seven hundred and twenty-one and 60/100 ($1,721.60) dollars on account of and against whatever may be coming to her from my estate by way of inheritance or under my will; and this amount I likewise want and direct to be deducted from her distributive share under this my will.

"Item VII.   The gifts, bequests and devises herein made to my wife, Mollie I Redding, are made to her in lieu of dower; and should she refuse to accept them in lieu of dower and elect to take dower instead, then said gifts, bequests and devises herein made to her are to be null and void.

"Item VIII.   I nominate, constitute and appoint Thomas J. Redding, Jr., my son, J. Morgan Fennell, my son-in-law, and A. J. Pettis, my friend, to be executors in

this my last will and testament, and direct that each and every of them be permitted to qualify and act without bond of any description or kind.

"IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my seal this 20th day of June, A. D. 1919."

On the 5th day of November, 1923, the sheriff sold under execution against J. W. Redding an undivided one-seventh interest in the lands described in the bill and the Bank of Greenville became the purchaser and obtained a deed therefor.

The defendants denied that J. W. Redding acquired any interest in the lands under the will and so denied that any interest therein passed to the bank under the sheriff's sale. It was averred that J. W. Redding had received more than his share of the estate of the deceased father. A copy of the will was attached to the answer and made a part of it. It was averred that J. W. Redding had "received and accepted" from his father, during the latter's lifetime, the sum of $4,162.05 "as an advancement on account of and against whatever might be coming" to him from the estate of his father "by way of inheritance or under (the) will." "Which said sum the said Thomas J. Redding, Sr., by the expressed conditions and terms of his said last will and testament, directed to be deducted from the distributive share of the said J. W. Redding under said will," as appears by Item VI. That the sum of $4162.05, advanced to J. W. Redding, "was more than one-eighth of all the property, real, personal and mixed given, bequeathed and devised and advanced" by the testator to his wife and children. That the value of all the property bequeathed and devised by the testator under the terms of Item V was less than $27,912.75 at the time of the testator's death; so that J. W. Redding took nothing thereby.

The defendants averred that the deed held by the Bank was a cloud upon the title to the lands described and prayed that it be cancelled.

The defense rests upon the proposition that Item VI of the will directing that the sum of $4162.05, which had been received by J. W. Redding prior to the testator's death, should be treated as an advancement to J. W. Redding by his father, whose intention it was that the devise made by Item V should be adeemed by the advancement.

In other words, the defendants contend that the devise of land to J. W. Redding was intended by his father to be adeemed by an advancement to the son made prior to the date of the will.

T. J. Redding, Sr., having advanced to his son, J. W. Redding, a certain sum of money, afterwards by will vests in that son the fee simple title to an undivided one-eighth interest in certain lands and bequeathed a one-eighth interest in the personal property remaining after certain special bequests and legacies were paid. The clause containing that devise of land and bequest of personal property was followed by a statement that the testator had advanced the sum of money to his son "on account of and against whatever may be coming to him" from the estate by way of inheritance or under the will. This statement was followed by the expressed desire that the sum advanced to the son should be "deducted from his distributive share under this my will."

The term "distributive share" means the share which a person takes in personal property in case of intestacy. The meaning relates only to an intestate estate or one made so as to a widow who waives the will. See Taft v. Taft, 163 Mass. 467, 40 N. E. Rep. 860; 9 R. C. L. 80; 14 Cyc. 524; 3 Words & Phrases 2135.

The deceased did not die intestate but left the amount of

his personal property, remaining after the payment of certain legacies, to be distributed between his wife and children uncertain. That is, dependent upon what he might own of that character of property at the time of his death.

As that distribution approximated what they would have taken by inheritance if the deceased had died intestate and as he could not know at the time the will was drawn the date in the future of his demise nor the value of the personal estate which subsequent accretions during the remainder of his life might produce it is not unreasonable to say that the term "distributive share" was used correctly and with its proper meaning and was intended to apply only to the personal estate, which J. W. Redding might take under the will. Such interpretation of the language of the will seems obviously correct when it is considered that the doctrine of "advancement" is based on the assumed desire of the donor to equalize the distribution of his estate among his children. So the very foundation of the rule prevents the doctrine from applying unless the ancestor dies wholly intestate.

The testator is conclusively presumed to have considered the advancement and the bequests made in the will collectively and to have made distribution as he intended to make it, 1 R. C. L. 657, and that a devise may not be adeemed by the payment of money. Where the will is executed which contains a devise a subsequent payment of money to the devisee is not an ademtion of the devise, but that a devise made subsequently to the advancement should be considered adeemed by the advancement is anomalous in the extreme and should not be so considered unless the intention of the testator is clear to the point of absolute certainty and even then the nature of the transaction would present an irreconcilable contradiction. See Campbell v. Martin, 87 Ind. 577; Burnham v. Comfort, 108 N. Y.

535, 15 N. E. Rep. 710, 2 Am. St. Rep. 462; Fisher v. Keithley, 142 Mo. 244, 43 S. W. Rep. 650.

In the case at bar the land was devised; it remained in possession of the testator; he was seized of it when he died; the will operated upon it; a prior gift of personalty could not operate to revoke the devise made subsequently to the gift.   The theory of ademption is that the gift contemplated by the will to take effect after the death of the testator is advanced during his lifetime.   See Sec. 3596, Revised General Statutes.

Item VI was no such revocation of the will as contemplated by the above statute.

To give effect to the contention of the appellants would be to hold that Item V was a valid devise of real estate and Item VI, immediately following, was a revocation of it.   To hold that because the appellee's "distributive share" of the personality did not equal in amount the sum advanced to him by his father in the latter's lifetime is to say that the executors have the power to revoke the devise to the appellee upon that fact appearing, which is to revoke a devise or disposition of lands in a manner or by a method in contravention of the statute.

But the statute should not be disregarded by the courts, even to carry out the intention of the testator, even if it could be said that such was his purpose.

Our statute provides a method for handling advancements by what is known as hotchpotch, but it is not applicable to this case because the deceased did not die intestate.   See Sec. 3625, Revised General Statutes.

There was no error in the order of the Chancellor granting the motion to strike certain parts of the answer so it is affirmed.

BUFORD, J., concurs.

WHITFIELD, J., concurring specially:

The will in this case was doubtless made upon the sup-
position that the testator had sufficient personal property
to be divided among his legatees to make the share of his
son, J. W. Redding, at least equal to the amount of the
advancement to him; and it is not clear that the testator
intended that the share of real estate devised to J. W.
Redding should be reduced to the extent that the advance-
ment to him exceeded his share of the personality.

ELLIS AND BUFORD, J. J., concur.

STRUM, J.—As abstract propositions, I agree with the
principles of law enunciated by Mr. Justice Ellis in the
opinion delivered by him.  I do not, however, agree to their
applicability as the controlling principles upon which this
case should be decided.  To hold that the testator in this
instance employed the expression ''his distributive share''
in its technical significance in law, injects an anomaly into
the will, rendering the quoted expression inharmonious
with the spirit of the will and the intention of the testator
as disclosed by other plain provisions found therein.  I
refer particularly to that statement in the will that ad-
vances had been made by the testator to his son J. W. Red-
ding ''on account of and against *whatever may be coming
to him from* my estate by way of inheritance *or under
will.*''  (Italics supplied.)  These advances the testator
''wanted and directed'' deducted from that son's ''dis-
tributive share'' under the will.

The interest J. W. Redding would receive in the lands in
controversy is something that would ''be coming to him
*   *   *   under (the) will.''  It seems to me that the con-
struction placed by Mr. Justice Ellis on the expression
''distributive share,''—while entirely correct in its tech-
nical aspect when isolated from the other provisions of this

will,—ignores the other provision of the will hereinabove quoted, which convincingly evidences the testator's intention that each one of his children should share equally and alike, and that previous advancement to J. W. Redding should be taken into account in equalizing the respective shares.

In the construction of a will the cardinal rule to which all others must yield is that "the intention of the testator, as therein expressed, shall prevail over all other considerations if consistent with the principles of law. To this great rule in the exposition of wills, all others must bend." Cole v. Cole, — Fla. —; 103 South. Rep. p. 78. And again in Sorrells v. McNelly, — Fla. —; 105 South. Rep. 106, this Court further said: "To ascertain and give effect to the intention of the testator is the cardinal rule of testamentary construction. We have found no exception to this rule, except where the testator attempts to dispose of his property contrary to some rule of law or public policy. * * * The intention of the testator is to be gathered from a consideration of all the provisions of the will taken together, rather than from detached portions or any particular form of words."

An expression in a will which is susceptible of two constructions should receive that construction which will harmonize with other provisions of the will, provided such construction does not result in a disposition of the testator's property contrary to some rule of law or public policy. By construing the expression, "distributive share" in its non-technical sense, it harmonizes with the evident intention of the testator found elsewhere in the will, in language unmistakably plain and untechnical, that his children should share equally and alike, taking into account the previous advancement to his son J. W. Redding. I am convinced that the testator employed the words "distributive share," not in their technical sense, but merely as a desig-

nation of that share of his estate which would fall to J. W. Redding in the distribution thereof; and that the testator intended the provisions of paragraph VI of his will, which directed a deduction of the advances, as an ademption pro tanto of the devise in paragraph V, in order to equalize the shares of his respective children.

I therefore dissent, and am of the opinion that the order appealed from should be reversed.

BROWN, C. J., AND TERRELL, J., concur.