It was in the spring of 1940 when the minds of William Miley, a widower aged 62, and of Anna May Thatcher, a widow some three years his junior, seasonably turned to thoughts of matrimony. Their contemplations, however, neither repudiated nor discarded a conception of some practicalities.
There was an antenuptial agreement dated April 29, 1940, acknowledged May 3, 1940, and recorded May 16, 1940, the pertinent terms of which are exhibited by the following quotation:
"WITNESSETH: Whereas, the said parties contemplate entering into marital relations with each other; and
"WHEREAS, The said party of the first part is seized and possessed of real and personal property in his own right, and
"WHEREAS, The said party of the second part is not the owner of any real property in her own right; and
"WHEREAS, Each of the said parties has a child or children who are the issue of a former marriage, and all of such children are of full age; and
"WHEREAS, The said parties desire that their said marriage shall not in any way change their existing legal rights, or the existing legal rights of their children and heirs, in the real and personal property of each of them, except as hereinafter provided.
"NOW, THEREFORE, It is mutually agreed as follows:
"1. That the said party of the first part, shall provide a home for the said party of the second part, during the continuance of their marriage.
"2. That if the said party of the first part shall survive the said party of the second part, he shall not, as surviving husband, make any claim to any part of the estate of which the said party of the second part may die seized or possessed; and the said party of the first part in consideration of said marriage, hereby waives and relinquishes all right in and to the real property of which the said party of the second part may die seized, as well as all right in and to the personal estate of the said party of the second part, whether as surviving husband, heir-at-law, or otherwise.
"3. The said party of the first part agrees that if the said party of the second part shall survive him, she shall receive from his estate *Page 351 
and heirs, executors, administrators or legal representatives of his estate, the sum of twenty-five ($25.00) dollars each and every month during her widowhood; the same to be in full satisfaction, payment, and discharge of any and all claims that the said party of the second part may have to dower or homestead right, in any and all real property of which the said party of the first part may die seized, as well as in full satisfaction, payment, and discharge of any and all of the claims that the said party of the second part may have as his widow, or heir-at-law, or otherwise, or to any part of his real and/or personal estate.
"4. That, in consideration of said marriage, the said party of the second part agrees, if she shall survive the said party of the first part, she will make no claim to any part, or share of the real and/or personal estate of which the said party of the first part may die seized or possessed, except for the provision set forth in paragraph numbered three to be paid out of such estate for the term of her widowhood, and the said party of the second part hereby waives and relinquishes all claims to any allowance, dower or any other right in and to the real and personal estate of the said party of the first part, except as aforesaid.
"5. That, except as herein provided, neither party hereto, by virtue of said marriage, shall have, or acquire, any right, or claim in and to the real, or personal estate of the other, but the estate of each shall descend to, or vest in, his or her heirs-at-law, legatees, or devisees, as may be directed by his or her last will and testament, or in default of such last will and testament, by the law then in force, as though no marriage had ever taken place between said parties.
"6. That, if either party shall mortgage or sell and convey, his or her real estate, whether in whole or in part, the other party hereto shall, upon demand, from time to time, join in any and every mortgage or deed of conveyance, or any other instrument that may be necessary, or desirable, to make the same effectual.
"7. That this agreement is entered into by the parties hereto with full knowledge on the part of each of the extent and probable value of all of the property or estate of the other, and of all rights that, but for this agreement, would be conferred by law upon each of them, in the property or estate of the other, by virtue of the consummation of the said proposed marriage; and the rights of the respective parties hereto in and to each other's property or estate, of whatsoever the same shall consist, shall be determined, fixed and settled by this agreement and not otherwise.
"8. That this agreement shall bind the parties hereto, and their respective heirs, legal representatives, and assigns."
On February 5, 1948, Mr. Miley died a resident of Princeton, New Jersey, survived by his widow, two daughters, Margaret Miley Persing and Annie Miley Conover, and a granddaughter, Anna May Tolle. His last will and testament is *Page 352 
dated March 24, 1947, which I note with significance is subsequent to the antenuptial agreement and to the acquisition of the residential property at Seaside Heights.
I select from the will the provisions of present relevancy:
"SECOND: I give and bequeath my car and all household furnishings located in our residence at the time of my death to my wife, Anna May Thatcher Miley.
"THIRD: WHEREAS, An agreement was made by and between me and my wife under her then name of Anna May Thatcher on April 29, 1940, which said agreement is recorded in the Mercer County Clerk's Office in Book 802 of Deeds, on Pages 422 c. c., I declare that the provision for my wife under this Will shall be in lieu of all her right of dower in my Estate and in lieu of paragraph numbered `3' in said agreement.
"FOURTH: All the rest, residue and remainder of my estate, of whatsoever kind and nature, and wheresoever the same may be situated, of which I shall die seized or possessed, or to which I may be entitled at the time of my death, I give, devise and bequeath, as follows:
"(a) 20% thereof to my wife, Anna May Thatcher Miley, absolutely and in fee simple."
Meeting some diversity of opinion concerning the administration of the testator's estate, the plaintiff in its fiduciary capacities as executor and trustee has instituted this action to elicit instructions.
Tersely stated, the predominant question is whether the antenuptial agreement effectively precludes the testamentary dispositions to the testator's widow in that by virtue of the agreement it is asserted that she relinquished all right to claim and accept any part of the testator's estate.
I think not. A textual reading of the agreement discloses that while it reduced the future obligations of the testator, it did not abbreviate his benevolent privileges. True, Mrs. Miley surrendered all of those rights in her husband's estate intrinsically to be derived solely from the marital relationship, "but the estate of each shall * * * vest in, his or her * * * legatees, or devisees, as may be directed by his or her last will and testament * * *." The excerpt is from paragraph 5. Paragraph 4 alludes to claims "to any allowance, dower or any other (such) right in and to the real *Page 353 
and personal estate of the said party of the first part." The insertion of the word "such" is in conformity with the ruleejusdem generis. Baker v. Baker, 82 N.J. Eq. 150, 91 A. 729; Camden Safe, etc., Co. v. Cape May, etc., Co.,102 N.J. Eq. 351, 140 A. 672.
Manifestly the agreement in hand was not intended to be in satisfaction or ademption of any legacy or devise which the one spouse first deceased might make to the surviving spouse, by will. In the absence of such an intention the right of one spouse to take under the will of the other is not in law or equity demolished or foreclosed by an antenuptial contract or property settlement between them. Congruous authorities are: Shirley v.Johnson, 207 Wis. 549, 242 N.W. 207, 86 A.L.R. 1; In reMcGlone's Will, 284 N.Y. 527, 533, 32 N.E.2d 539, 542, on appeal, sub nom. Irving Trust Co. v. Day, 314 U.S. 556, 562,62 Sup. Ct. 398, 401; In re Willett's Estate,178 Misc. 1000, 36 N.Y.S.2d 992; Taft v. Taft, 163 Mass. 467,40 N.E. 860; Coane's Estate, 310 Pa. 138, 165 A. 2;26 Am.Jur. 891, § 283; 104 A.L.R. 1104, Anno.; 4 Page on Wills
(Lifetime ed.), § 1373.
It is nevertheless theorized that since each of the parties to the antenuptial compact had surviving issue of their former marriages, it is logically to be inferred that the antecedent concordance was motivated by a reciprocal desire to protect their progeny from an impairment or abridgment of their natural inheritance in consequence of the remarriage. Perhaps to the amplitude of abrogating and countermanding purely connubial interests and estates of the one in the assets of the other, such was the object, but the terms and provisions of the agreement cannot be inflated or augmented beyond their unmistakable import. Each party obviously reserved the power to dispose of his or her property by will according to the dictates of his or her conscience and intuition.
Somewhat incidentally I am reminded by counsel that in 1943 the testator acquired by purchase a residential estate at Seaside Heights in Ocean County, the title to which he moored in himself and his wife as tenants by the entirety. Notwithstanding some subsequent dislocations, such was the state of *Page 354 
the title at the testator's death. Suppose the lodgment of such an estate in his wife was unromantically a property settlement, I perceive nothing in this case legally restraining the testator from superseding it.
It is observed that the testamentary provision for the wife was declared to be "in lieu of all her right of dower in my estate and in lieu of paragraph numbered `3' in said agreement."
My conclusion is that the widow has a right of election, either to take under the agreement or under the will. The fiduciary is so instructed. *Page 355