## GULF OIL CORPORATION v. RICHARD R. HEATH, DIRECTOR OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION

73-126                                        501 S.W. 2d 787

Opinion delivered December 3, 1973

*Cockrill, Laser, McGehee, Sharp & Boswell, John E. Bailey* and *William G. Duck,* for appellant.

*Walter Skelton, Karl Daley Glass Jr., John F. Gautney Jr., Alexander W. Nisbet, Dewey Moore Jr.,* and *J. R. Nash,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal relates to a suit for refund of franchise tax assessments totaling $46,129.74, which appellant, Gulf Oil Corporation (hereinafter called Gulf) paid under protest for the years 1970, 1971, and 1972. In 1968, appellant amended its Articles of Incorporation so as to provide for a two for one stock split by reclassifying and changing its outstanding shares of stock from par value of $8.33 1/3 per share to no-par $4.16 2/3 per share stated value. In 1969, Gulf duly filed its franchise tax reports and paid taxes in the total amount of $12,349.62 for those years. This amount was computed by Gulf on the basis that the

reclassification of its stock from par value to no-par stated value did not change the amount of capital of the corporation represented by its no-par stated value shares of stock. Appellee refused to accept these payments on the basis that Ark. Stat. Ann. § 84-1837 (Repl. 1960) required that the value of no-par stock be computed at $25.00 per share and an additional payment from Gulf was demanded in the amount of $61,708.12 covering the aforementioned period. This amount was paid under protest. The commissioner[1] was requested to conduct an informal hearing for the purpose of determining the proper basis for the computation of the amount of taxes due, and at such hearing, Gulf contended that under the statute, the commissioner possessed discretionary authority to disregard the presumed statutory value of $25.00 per share and to compute the tax on the basis of the aforementioned stated value of the no-par value stock. The commissioner disagreed, holding that he was required under the aforementioned statute to compute Gulf's franchise taxes on the no-par value stock on a basis of $25.00 per share. Suit was instituted by appellant in the Pulaski County Chancery Court wherein judgment was sought for the asserted overpayment, and Gulf also sought a restraining order restraining appellee from assigning for franchise tax purposes an arbitrary value of $25.00 per share on the no-par stated value stock. Appellee demurred to the complaint, which demurrer was sustained by the trial court, and appellant, electing to stand upon the complaint, same was dismissed for want of equity. From the decree so entered, appellant brings this appeal. For reversal, three points are asserted which we proceed to discuss.

It is first contended that the Corporate Franchise Tax Act, Act 304 of 1953 (Ark. Stat. Ann. § 84-1833—84-1842 [Repl. 1960]), made decisive changes in the substance and administration of the Corporate Franchise Tax Act then in existence, Act 367 of 1923, by creating

---

[1]The original suit was brought against A. B. Hervey, Jr., Acting Director of the Department of Finance and Administration, but was revived in the name of Richard R. Heath, Director of such department as the successor in office to Hervey.

only a rebuttable presumption as to the value of no-par value stock and by granting appellee discretionary authority to compute the amount of franchise tax on the basis of the stated value of said no-par stock. This argument is based on the fact that the present statute, heretofore cited, uses the phrase "such shares of no-par value shall be *deemed* [our emphasis] to be of the par value of Twenty-five Dollars ($25.00) per share", while Act 367 of 1923 used the language "such shares shall *be taken* [our emphasis] to be of the par value of Twenty-five Dollars ($25.00) each."

In *State* v. *Margay Oil Corporation,* 167 Ark. 614, 269 S.W. 63, this court held that the 1923 act was valid; that the state may make reasonable classifications of corporations for taxing purposes if all corporations of the same class are treated alike, and further held that the $25.00 per share figure given no-par value stock was reasonable. There was apparently no contention on the part of Margay that the words "be taken" created anything other than a conclusive presumption. In *Gilliland Oil Co.* v. *State, ex rel Attorney General,* 171 Ark. 415, 285 S.W. 16, we said:

"The question of the validity of the act of 1923, supra, fixing the taxable value of nonpar value stock, and the question of the application of that statute to foreign corporations, must be treated as foreclosed by the decision of this court in *State* v. *Margay Oil Corporation,* 167 Ark. 614."

On appeal to the United States Supreme Court, that court, in a short *Per Curiam,* affirmed *Margay* on the authority of *Roberts & Schaefer Co.* v. *Emmerson,* 271 U. S. 50. In the cited case, the court said:

"The only question with which we need be concerned is whether there are such differences between the two privileges to issue the two classes of stock, as to constitute a proper basis for classification for purposes of taxation, so that the amount of the tax in the one case may be based on the issue price of the stock, and in the other upon the maximum

price at which it may be issued, regardless of the price at which it actually is issued."

The court held there was such a basis.

Accordingly, our statute which used the words "be taken" has been held valid, and the court has said that a state has the right to make reasonable classifications; this, of course, included our own classification wherein the value of no-par stock was set at $25.00 per share.

Though admitting that under the 1923 act, there was a conclusive presumption that no-par value stock was to be taxed at the value of $25.00, the commissioner having no discretion to find otherwise, appellant contends the use of the word "deemed" in the present statute only creates a rebuttable presumption and the commissioner is free to follow or reject the $25.00 figure.

It is asserted that Section 6 of Act 304 (Ark. Stat. Ann. § 84-1838), when read in conjunction with Section 5 (Ark. Stat. Ann. § 84-1837) of the act, supports this construction. We do not accept this argument for we agree with appellee that Section 6 refers back to Section 4 (Ark. Stat. Ann. § 84-1836).[2]

---

[2]Pertinent provisions of those sections read as follows:

"Section 4. ***Each corporation, the tax for which is fixed in lump sums by this act, which shall fail or refuse to file its report or shall fail or refuse to furnish the information necessary to the proper determination of the tax hereunder on or before June 20th of the reporting year, shall pay the maximum tax herein provided for corporations of this particular classification, and each other corporation which shall fail or refuse to file its report or shall fail or refuse to furnish the information necessary to the proper determination of the tax due hereunder on or before June 20th of the reporting year, shall pay a tax at the rate herein provided based on its entire outstanding capital stock whether or not all or only a part of its capital is employed in Arkansas, and the Commissioner shall accordingly, on the basis of information available to him from whatever source, including prior reports, charge and collect such tax. ***

"Section 5. In any case in which the par value of the shares of a corporation is required to be stated in any report required under the provisions of this act, if such shares are without par value, the number of such shares shall be stated, and, for the purpose of computing the franchise tax by this act pres-

We do not attach the importance to the change from "be taken" to "deemed" that is argued by appellant. In the first place, we do not have a situation where only one word was changed; rather, the entire section has been re-written and there have been numerous changes in words used. In the next place, practically all judicial construction of the word "deemed" is contrary to the argument of appellant. Only one case is cited holding with appellant, viz., the North Dakota case of *Kleppe* v. *Odin Township,* 169 N.W. 313, where the district court construed the word "deemed" to be a disputable presumption. In *Harder* v. *Irwin,* 285 F. 402, the District Court for the Northern District of New York, said:

"The word 'deemed' has been judicially defined. In *Leonard* v. *Grant* (C. C.) 5 Fed. 11, 16, it is stated that:

' "Deemed" is the equivalent of "considered" or "adjudged," and therefore whatever an act requires to be "deemed" or "taken" as true of any person or thing, must, in law, be considered as having been duly adjudged or established concerning such person or thing, and have force and effect accordingly.'

"In *U.S.* v. *Doherty,* (D. C.) 27 Fed. 730, 734, it was thus defined:

' "Deem" means "judge;" "determine on consideration." The primary meaning of the word is to form a judgment; to conclude on consideration.' Words and Phrases, First Series, 'Deem.'

"There are several other judicial expressions of the word 'deemed,' among them being in *Walton* v. *Cavin,* 16 Q.B. 48, 81, where it was stated that where a person was 'deemed' to be a soldier it must be

cribed, such shares of no par value shall be deemed to be of the par value of Twenty-five Dollars ($25.00) per share.

"Section 6. The Commissioner, from the facts reported and from any other facts coming to his knowledge bearing upon the subject, shall compute the amount of the tax by each of said corporations at the applicable rate or rates hereinbefore provided, ***".

understood to mean that he was thereafter to be taken in that capacity. Also, in *Cardinel* v. *Smith,* 5 Fed. Cas. 45, 47 No. 2, 395, the statute provided that dealers in canned goods under certain circumstances shall be deemed to be manufacturers and the court stated that they were to be held liable as manufacturers, notwithstanding that they were not such in fact. Other cases to the same effect are *Lawrence & Co.* v. *Seyburn,* 202 Fed. 913, 121 C.C.A. 271; *Michel* v. *Nunn* (C.C.) 101 Fed. 423, 424."

In *H.P. Coffee Company* v. *Reconstruction Finance Corp.,* 215 F. 2d 818, the question of the meaning of the word "deemed" arose and the court stated:

"It is said that the word must be construed as raising only a rebuttable presumption that the subsidy has been paid on all coffee which an importer has in his terminal inventory, and that this presumption disappears on proof by an importer that, in fact, he has received no subsidy payments thereon. This contention flies directly into the teeth of the generally accepted definitive import of the word 'deemed' and almost unanimous judicial determination that the word, when employed in statutory law, creates a conclusive presumption. E.g., *United States* v. *Davis,* 1 Cir., 50 F.2d 903; *Harder* v. *Irwin,* D.C., 285 F. 402; *Intagliata* v. *Shipowners & Merchants Towboat Co.,* Cal. App., 151 P. 2d 133, subsequent opinion 26 Cal. 2d 365, 159 P. 2d 1; *King* v. *McElroy,* 37 N.M. 238, 21 P. 2d 80; *Commonwealth* v. *Pratt,* 132 Mass. 246. See 11 Words and Phrases, Deem, pp. 478 - 482. Absent qualifying language, or ambiguity, we must give to the word 'deemed', as employed in the emphasized language of paragraph 1 (f) (iii), its natural import."

We cannot agree that there is significance in the use of the word "deemed" rather than "taken", and accordingly find no merit in this contention, holding that the language of the act creates a conclusive presumption as to the value of the corporation's no-par stock.

It is next asserted that if the tax act in question created a conclusive and irrebuttable presumption, Amendment Fourteen to the United States Constitution is violated, and the act is unconstitutional. Appellant calls attention to the cases of *Schlesinger* v. *Wisconsin,* 270 U. S. 230 (1926), *Heiner* v. *Donnan,* 285 U. S. 312 (1932), and *Mourning* v. *Family Publication Service,* 411 U. S. 356. In *Schlesinger,* the court held that a conclusive statutory presumption that all gifts of a material part of a decedent's estate made by him within six years of his death were made in contemplation of death, created an arbitrary classification and conflicted with the Fourteenth Amendment. In *Heiner,* the court held a congressional act violative of the Fifth Amendment, said act creating a conclusive presumption that gifts made within two years prior to the death of the donor were made in contemplation of death, and we cannot see that *Mourning* (which dealt with the Truth in Lending Act) adds anything to the holdings in those cases. Of course, none of these cases dealt with a franchise tax and the most recent case cited by appellant, *Vlandis* v. *Kline, et al.,* 412 U. S. 441, decided by the United States Supreme Court on June 11, 1973, deals with the residency of students attending state supported institutions in Connecticut. In fact, we find no recent case involving a franchise tax. Both appellant and appellee agree that in *Shanahan* v. *United States,* 447 F. 2d 1082, the Circuit Court of Appeals for the Tenth Circuit, in construing the internal revenue statute, stated that a conclusive presumption will be upheld so long as it is reasonable. Appellant recognizes that there are statutes in other jurisdictions applying a value to shares of no-par stock, but asserts that this fact is not persuasive.[3]

Let it be remembered that appellant voluntarily

---

[3]From appellant's brief:

"We are also familiar with statutes from other states which apply a presumed value to each share of no-par stock which said statutes are completely irrelevant to a correct interpretation of Ark. Stats. 84-1837. We are not challenging the constitutionality or reasonableness of those statutes. Such statutes are not persuasive in this case unless appellee can prove the constitutionality and reasonableness of each of those statutes, as applied to the facts and law involved herein."

brought itself within the statute at issue, having full knowledge of the law as it had existed since 1953, it having paid the tax on par value stock until 1969. In *H. P. Coffee Company* v. *Reconstruction Finance Corp., supra,* the complainant contended that if the term "deemed" was construed as a conclusive presumption, such construction would conflict with the due process clause of the constitution. Though this case dealt with a contract between the parties, we think the observation of the court, in holding contrary to this contention, was interesting. The Court said:

> "Having brought itself within the terms of the provisions by its own voluntary act, complainant cannot say that the logical result offends against the due process clause."

Actually, the question here at issue was decided adversely to the present appellant when we disagreed with its argument relative to there being a difference between the meaning of the words "deemed" and "be taken", and accordingly held that "deemed" creates a conclusive presumption. Such construction leaves the holding in *Margay* controlling.

Finally, it is contended that if a conclusive and irrebuttable presumption as to the value of no-par stock was created by the statute, then said franchise tax as applied to corporations with no-par stock is unconstitutional since it creates a discriminatory classification between tax assessment at par as opposed to no-par stock because no practical or legal differences exist between the two classes of stock. The view taken by appellant is contrary to *Roberts & Schaefer Co.* v. *Emmerson, supra,* and *New York* v. *Latrobe,* 279 U.S. 421. We have already quoted from *Emmerson,* and in the last mentioned case, the court said:

> "It is said that the tax computed on the number of non-par shares at a flat rate may bear little relation to the property and business of the corporation within the state and consequently corporations having like property and business within the state,

but with a different non-par capitalization, may be required to pay a different tax. But this is equally true of corporations having par value stock, even though full value be paid in on its issue. Par value and actual value of issued stock are not synonymous and there is often a wide disparity between them. Par value has long been a familiar basis of computing a franchise tax upon foreign corporations, and when otherwise unobjectionable has been repeatedly upheld by this Court.***

"The kind and number of shares with which a foreign corporation is permitted to carry on its business within the state is a part of the privilege which the state extends to it and is a proper element to be taken into account in fixing a tax on the privilege. It may be assumed that if the doing of business with a greater number of non-par shares is not deemed by the taxpayer to be a valuable privilege, it will reduce the number of shares as the statute permits. ***

"Nor is such a tax to be deemed a denial of equal protection because a different measure or method of computing the tax is applied to corporations having non-par stock from that applied to corporations having stock of par value."

Here, too, if appellant, as stated in its point for reversal, feels that there is no difference between the two classes of stock, it is, of course, free to return to the par value stock. And, if there is no difference, the question immediately arises as to what potential benefits necessitated the change. Without going into detail, suffice it to say that we do not agree that there are no longer any differences between the two types of stock; while the differences may not be as distinct or as easily ascertainable as at the time of *Roberts & Schaefer Co.* v. *Emmerson, supra,* and *State* v. *Margay Oil Corporation, supra,* nonetheless, differences do remain. For instance, one of the vital differences between par value and no-par value stock lies in the method of fixing the consideration to be paid by the subscriber to the capital of the corporation,

i.e., a main difference is that par stock must be issued for at least its par value, while no-par stock may be sold for any consideration fixed by the directors. At any rate, we do not detect such changes as would vitiate the Supreme Court decisions in *Emmerson* and *Margay;* if, however, we are incorrect in this conclusion, the proper place for nullification of the rulings there rendered is the United States Supreme Court—not this court.

Affirmed.

FOGLEMAN J., concurs.

JOHN A. FOGLEMAN, Justice. concurring. I concur because Act 304 of 1953 was a comprehensive new act governing franchise taxes and not simply an amendment or, for that matter, even a re-enactment of Act 367 of 1923, which was somewhat more limited in scope. Otherwise, since the word "deemed" is not necessarily completely synonymous with the word "taken," I would attach great significance to the change of words.