**In the Matter of the ESTATE of George Wayland EVANS, Deceased.**

**Otto W. REEL, Executor, Appellant,**

**v.**

**IOWA DEPARTMENT OF REVENUE, Appellee.**

**No. 2–58502.**

Supreme Court of Iowa.

May 25, 1977.

Dennis E. Roberson, Maquoketa, and Allen E. Brennecke, of Mote, Wilson & Welp, Marshalltown, for appellant.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., Harry M. Griger, and Kevin Maggio, Asst. Attys. Gen., for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REYNOLDSON, Justice.

The fighting issue in this appeal involves the Iowa Department of Revenue's exclusive use of mortality tables in computing the value of a life beneficiary's interest in a testamentary trust. The beneficiary, whom the evidence disclosed would not live out a normal life, asserted due process guarantees of the state and federal constitutions were violated by the Iowa statute and Department rule prescribing the mortality tables as the sole basis for determining value of the interest and resulting inheritance tax. Trial court held there was no violation of constitutional due process. We agree.

The essential facts are not disputed. George W. Evans, a resident of Jackson County, died testate on April 17, 1973. One of the provisions in his will provided for certain property to be placed in trust with a corporate trustee. Decedent's cousin, Paula Jo Faulconer, was to receive the trust income for life. Upon termination of her life interest, a charitable institution was to receive the corpus. The value of Paula's life interest in the trust is subject to inheritance tax; the remainder is exempt.

Paula was 16 years of age when Evans died. In computing the value of her trust interest, the Department insisted on using the mortality tables which projected for her a 70-year life expectancy.

Protesting, Paula on April 1, 1975 filed in district court an "Application for Determination of Iowa Inheritance Tax Owing." This application alleged the inflexible resort to mortality tables created an irrebuttable presumption in violation of the due process clauses of the Iowa and federal constitutions.

The parties stipulated that if Paula's family doctor were called to testify he would state his patient had suffered from cerebral palsy since birth. She is totally paralyzed in her lower limbs and partially handicapped in her upper limbs. Consequently, she is unable to move her body except through use of braces, a wheelchair, or crutches. Three separate pneumonia attacks have weakened Paula's respiratory system and increased her susceptibility to

chest colds. These parties stipulated this doctor would testify it was his opinion, based on reasonable medical certainty, that Paula could not be expected to live beyond age 40. The Department did not controvert these facts, but merely objected the evidence would be incompetent, irrelevant and immaterial for purposes of determining the Iowa inheritance tax owing.

The sole issue before us is whether trial court was right in holding the applicable statute and rule did not violate the due process clauses of the Iowa and United States Constitutions. See Amendment 14, section 1, United States Constitution; Article I, section 9, Iowa Constitution.

I. The heavy burden which must be carried by one seeking to invalidate a statute on constitutional grounds has been described in several recent decisions and will not be repeated here. *John R. Grubb, Inc. v. Iowa Housing Finance Authority,* 255 N.W.2d 89 (Iowa 1977); *City of Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977).

The crucial statute is § 450.51, The Code, which provides in relevant part:

"The value of any * * * estate for life * * * subject to inheritance tax *shall be* determined for the purpose of computing said tax by the use of current, commonly used tables of mortality and actuarial principles pursuant to regulations prescribed by the director of revenue. * * *." (emphasis supplied)

The only applicable regulation prescribed by the director of revenue is found in Iowa Administrative Code, Revenue [730], Ch. 86, § 86.1 (450):

"The Commissioners 1958 Standard Ordinary Mortality Table. Where death occurs on or after July 4, 1965, inheritance tax *shall be* computed by use of the Commissioners 1958 Standard Ordinary Mortality Table.

"This rule is intended to implement chapter 450 of the Code." (emphasis supplied)

Both parties agree this statute and regulation impose the mortality table as the exclusive method of proving the value of a life estate and no extrinsic evidence is allowed to rebut the expectancies reflected by the tables.

The beneficiary argues this creates an irrebuttable presumption, a device a number of federal decisions have held to be constitutionally invalid under the due process clause. The Department asserts the statute merely creates a rule of substantive law, not an unconstitutional presumption.

II. No controlling Iowa decisions have been found in the research of the parties or this court. Our decision in *State v. Hansen,* 203 N.W.2d 216 (Iowa 1972), contains an extensive examination of the role of presumptions and inferences in criminal statutes. We there held a statutory presumption that a person with a stated amount of alcohol in his blood was under the influence of an intoxicating beverage could not constitutionally be interpreted as a conclusive presumption. See *State v. Drake,* 219 N.W.2d 492, 496 (Iowa 1974).

In *Farnsworth v. Hazelett,* 197 Iowa 1367, 199 N.W. 410 (1924), we had under scrutiny the general rule that knowledge of an attorney is chargeable to his client, a concept sometimes termed a "conclusive presumption." The court reasoned such "presumptions" are actually substantive rules of law.

Although *Snook v. Herrmann,* 161 N.W.2d 185 (Iowa 1968), concerned § 85.-42(2), The Code, which provided a child under 16 "shall be conclusively presumed to be wholly dependent upon the deceased employee," the issues raised there were ones of statutory construction, not constitutionality.

Also, preliminary to our analysis, it should be noted there may be present in the type of problem we now face, the inevitable tension between the legislature's constitutional right to enact substantive law and the indestructible judicial function to investigate evidence in the factual determinations required in applying law to controverted cases. "Hence, to make a rule of conclusive evidence, compulsory upon the Judiciary, is to attempt an infringement

upon their exclusive province." IV Wigmore on Evidence § 1353, at 716 (3d ed. 1940).

III. The "irrebuttable presumption" doctrine had its roots in *Schlesinger v. Wisconsin,* 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926). There the court struck down a Wisconsin statute which conclusively presumed all transfers within six years of death were in contemplation thereof, stating,

> "Gifts inter vivos within six years of death, but in fact made without contemplation thereof, are first conclusively presumed to have been so made without regard to actualities, while like gifts at other times are not thus treated. There is no adequate basis for this distinction."
> —270 U.S. at 240, 46 S.Ct. at 261, 70 L.Ed. at 564.

While the opinion is posited on both due process and equal protection grounds, the above language more closely relates to equal protection.

*Schlesinger* was followed by *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), which invalidated on constitutional due process grounds a federal statute which conclusively presumed gifts made within two years of the donor's death were made in contemplation of death. The *Heiner* court observed " * * * that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the 14th Amendment." 285 U.S. at 329, 52 S.Ct. at 362, 76 L.Ed. at 781.

After *Heiner* the irrebuttable presumption doctrine was relegated to limbo for almost 40 years. Its revival is generally credited to *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), a decision striking down a Georgia statute which permitted the state to revoke a driver's license without a fault hearing if the driver failed to post security. See Chase, The Premature Demise of Irrebuttable Presumptions, 47 U.Colo.L.Rev. 653, 665–666 (1976).

There followed a succession of decisions applying the doctrine, including *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (striking down Illinois statute as conclusively presuming all unmarried fathers to be unfit parents); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (invalidating a Connecticut statute which conclusively fixed a student's residency status at time of application for university admission); *United States Department of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (striking a section of the Food Stamp Act which presumed food stamp ineligibility for households containing a member over 18 who had been claimed as a dependent for the previous year by a taxpayer living in another household); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (striking school regulations requiring pregnant teachers to take leave without pay beginning five months before expected birth of child).

But the irrebuttable presumption doctrine proved to be a risky tool. Any statute involving a legislative classification became vulnerable to an irrebuttable presumption attack and analysis. For example, the *LaFleur* regulations did not expressly invoke or mention a presumption, irrebuttable or otherwise, that women in the later stages of pregnancy were physically unable to work. Yet the court found the regulations to "contain an irrebuttable presumption of physical incompetency, and that presumption applies even when the medical evidence as to an individual woman's physical status might be wholly to the contrary." 414 U.S. at 644, 94 S.Ct. at 798, 39 L.Ed.2d at 62.

The doctrine was difficult to limit in its scope and application. In order to nullify a statute, *Vlandis,* supra, merely required a presumption not universally true in fact, and "reasonable alternative means of making the crucial determination." 412 U.S. at 452, 93 S.Ct. at 2236, 37 L.Ed.2d at 71. Other courts were impelled to uphold an irrebuttable presumption if it was found "reasonable," a rather subjective criterion at best. *Shanahan v. United States,* 447 F.2d 1082, 1084 (10th Cir. 1971); *Gulf Oil*

*Corp. v. Heath,* 255 Ark. 604, 501 S.W.2d 787, 791 (1973).

The apparent indiscriminate use of the doctrine came under a drumfire of criticism from academicians. See, e. g., Chase, The Premature Demise of Irrebuttable Presumptions, 47 U.Colo.L.Rev. 653 (1976); Note, Irrebuttable Presumptions: An Illusory Analysis, 27 Stanford L.Rev. 449 (1975); Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv.L. Rev. 1534 (1974). It invoked increasingly sharp dissents. See, e. g., *Vlandis,* supra, 412 U.S. at 459, 93 S.Ct. at 2240, 37 L.Ed.2d at 76 (Chief Justice Burger, dissenting); *LaFleur,* supra, 414 U.S. at 657, 94 S.Ct. at 804, 39 L.Ed.2d at 70 (Justice Rehnquist, dissenting).

Finally, in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the court severely limited the irrebuttable presumption doctrine. At stake in *Salfi* was a social security act provision which denied benefits to wives and stepchildren who held their respective relationships to a deceased wage earner for less than nine months prior to his death. See 42 U.S.C. § 416(c)(5) and (e)(2). A three-judge district court, on behalf of a widow who married the wage earner only six months before his death and who was denied benefits without hearing, struck the requirement on the ground it was an irrebuttable presumption which violated due process.

In rejecting the district court's analysis the Supreme Court said,

"We think that the District Court's extension of the holdings of *Stanley, Vlandis* and *La Fleur* to the eligibility requirement in issue here would turn the doctrine of those cases into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution."

—422 U.S. at 772, 95 S.Ct. at 2470, 45 L.Ed.2d at 543.

The rationale of the *Salfi* court's effort to distinguish *Vlandis* is obscure. The analysis it employed to validate the statute was essentially a minimum equal protection test. "[A] classification that meets the [equal protection] test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment." *Salfi,* supra, 422 U.S. at 770, 95 S.Ct. at 2469, 45 L.Ed.2d at 541–542. Reference to *"Dandridge"* was to *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–502 (1970), where the court held that in the area of economics and social welfare a state does not violate the equal protection clause because the classifications made by its laws are imperfect. If the classification has some reasonable basis it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality, so long as suspect classifications are avoided.

The *Salfi* decision appears to narrow the applicability of the irrebuttable presumption doctrine to situations involving what the court has elsewhere designated as "fundamental rights," or at least circumstances endangering crucial interests which *Salfi* refers to as "important liberties." See *Mourning v. Family Publications Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

It is true *Salfi* overrules no prior decisions. Apparently where there is a recurrence of almost identical factual situations, the United States Supreme Court will continue to apply the doctrine. See *Turner v. Dep't of Employment Security,* 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975).

IV. We thus turn to the statute before us, scrutinizing its features in light of *Salfi's* constraints on the irrebuttable presumption doctrine.

Of course the statute, implemented by the rule, lends itself to such an analysis. The mandatory use of the mortality table irrebuttably presumes every 16-year-old life beneficiary or tenant shall live 54 years, and the affected taxpayer has no hearing opportunity to prove otherwise. But if the classification meets equal protection standards, it will, under *Salfi,* meet the due

process challenge raised by the irrebuttable presumption doctrine.

◼ We note first the area in which the statute operates. The broad discretion granted a legislature to classify in the field of taxation has long been recognized. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351, 355 (1973); *Madden v. Kentucky,* 309 U.S. 83, 87–88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940).

This beneficiary is removed even further from a protected area because there is involved here a tax on the right of succession. "The tax is not a tax (though it is a lien) on the property itself, or upon the estate, but upon the succession or right to take by succession." *Tavener v. Tax Commission,* 231 Iowa 162, 166, 300 N.W. 653, 655 (1941).

"Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction."
—*Irving Trust Co. v. Day,* 314 U.S. 556, 562, 62 S.Ct. 398, 401, 86 L.Ed. 452, 457 (1942).

◼ Obviously, the legislation before us does not involve a fundamental right or "important liberty." Imposing the same inheritance tax on a 16-year-old who may live only 24 years and a 16-year-old who may live 54 years is probably no more basically unfair than imposing on a laborer who, through economic necessity "moonlights," a higher tax rate than is imposed on his neighbor who holds only one job. See *Brushaber v. Union Pacific R.R. Co.,* 240 U.S. 1, 21–24, 36 S.Ct. 236, 243–244, 60 L.Ed. 493, 503–504 (1915) (progressive tax rate structure is not a violation of due process clause of 5th Amendment).

◼ We now move to the other criteria by which such classification statutes are judged. No suspect classifications are involved. See Note, The Conclusive Pre-

sumption Doctrine: Equal Process or Due Protection? 72 Mich.L.Rev. 800, 810 (1974). The classification which imposes inheritance tax on the basis of the age of a life beneficiary or tenant is broadly based on reason and logic. That such an inflexible classification may sometimes result in inequality will not, under the above circumstances, invalidate it on equal protection grounds, *Weinberger v. Salfi,* supra, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522; *Dandridge v. Williams,* supra, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491. Therefore it will pass the due process test laid down in *Salfi.*

◼ We hold § 450.51, The Code, and its implementing rule minimally comport with Fourteenth Amendment due process under the *Salfi* decision, supra.

Of course, we may apply the due process clause of Article I, section 9, Iowa Constitution, in a different manner. See *Davenport Water Co. v. Iowa State Commerce Com'n,* 190 N.W.2d 583, 593 (Iowa 1971). However, where, as here, federal and state constitutional provisions contain a similar guarantee, they are usually deemed identical in scope, import and purpose. See *Shearer v. Perry Community Sch. Dist.,* 236 N.W.2d 688, 691–692 (Iowa 1975).

We do not propose to follow the United States Supreme Court's course into the irrebuttable presumption morass from which it has only so recently and stickily retreated. We hold this statute and rule are not in violation of due process under the Iowa Constitution.

In so holding, we are not unaware of the harshness of the result, an inevitable end product of every inflexible classification statute. A legislative determination to make the § 450.51 presumption rebuttable would promote justice in hardship cases. While the present rule enhances efficiency, the policy considerations articulated in *Stanley v. Illinois,* supra, 405 U.S. at 656, 92 S.Ct. at 1215, 31 L.Ed.2d at 561–562, are worthy of consideration:

"[T]he Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of

Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones."

But those policy considerations in these circumstances are for the legislative and not the judicial department.

Accordingly, we affirm the ruling below.

AFFIRMED.