## IRVING TRUST CO. ET AL., EXECUTORS, ET AL. *v.* DAY, EXECUTOR.

No. 51. Argued December 11, 1941.—Decided January 5, 1942.

*Mr. Philip Zierler* for the Irving Trust Co. et al., appellants.

*Mr. Ralph L. Kaskell, Jr.,* submitted for Edward McGlone et al., appellants.

*Mr. Andrew F. Van Thun, Jr.,* with whom *Mr. George H. Burtis* was on the brief, for appellee.

MR. JUSTICE JACKSON delivered the opinion of the Court.

The federal question presented upon this appeal is whether § 18 of the New York Decedent Estate Law

works an impairment of the obligation of contract, forbidden by Article I, § 10 of the Constitution, or a deprivation of property without due process, forbidden by the Fourteenth Amendment.

The instrument which appellants claim embodies a contract which has been impaired, and under which they claim property rights, reads as follows:

"I, Helena Day Snyder, being of sound mind and in possession of all my faculties, on the eve of my marriage to John J. McGlone, in London, England, on February 4th, 1922, wish to record, of my free will, that, as I already possess, in my own right, ample of this world's goods in the way of a fortune of my own, as a compliment to my aforesaid husband, and for other good and sufficient reasons, I hereby, voluntarily and irrevocably renounce all right, title and interest I might, legally or otherwise, have in any estate, real or personal, of which my said husband to be, John J. McGlone, might die seized."

Appellee's decedent, Helena Day Snyder, who died in the course of this litigation, executed this instrument in London two days before her marriage to John J. McGlone, appellants' decedent. The laws of New York at the time gave to a widow dower rights in her husband's real estate, but, except for restrictions on charitable gifts not involved here, left him otherwise free to make testamentary disposition of all his property to strangers.

On August 21, 1930, McGlone executed a will, one clause of which recited Helena's waiver but "nevertheless" made a bequest of $2,000 to her as a "slight token" of his affection and admiration. The legislation complained of, giving a testator's surviving spouse a right of election to take against the will, had been enacted as § 18 of the Decedent Estate Law on March 29, 1929, but it did not become effective until September 1, 1930, a

few days after McGlone executed his will.[1]  It permitted waiver by a spouse or prospective spouse of the protection thus afforded, but in order to be effective the waiver was required to be "by an instrument subscribed and duly acknowledged."[2]  The instrument signed by Helena was not acknowledged, and the new legislation was limited in operation to wills executed after its effective date.

McGlone so acted as to bring his estate under this new legislation.  On July 6, 1934, he executed a codicil

---

[1] Section 18–1 of the Decedent Estate Law, enacted by N. Y. Laws of 1929, c. 229, § 4, provided:

"Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed and leaves surviving a husband or wife, a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section."

Section 18–1 (f) provided:

"Where the aggregate of the provisions under the will for the benefit of the surviving spouse including the principal of a trust, or a legacy or devise, or any other form of testamentary provision, is less than the intestate share, the surviving spouse shall have the limited right to elect to take the difference between such aggregate and the amount of the intestate share, and the terms of the will shall otherwise remain effective."

[2] Section 18–9 read as follows:

"The husband or wife during the lifetime of the other may waive the right of election to take against a particular last will and testament by an instrument subscribed and duly acknowledged, or may waive such right of election to take against any last will and testament of the other whatsoever in an agreement of settlement so executed, made before or after marriage."

In the following year the words "of settlement" were deleted from this provision, and the following sentence was added:  "An agreement so executed made before the taking effect of this section wherein a spouse has waived or released all rights in the estate of the other spouse shall be deemed to release the right of election granted in this section."  N. Y. Laws of 1930, c. 174, § 1.

to his will which, although it did not disturb the provision made for his wife in his earlier will, had the effect of bringing the entire will, modified and republished, within the provisions of the new law [8] and thus, according to the terms of § 18, of giving her a right of election to take under the statute and against the will.

Helena sought to exercise this right, and thus precipitated the present litigation, in which the quoted instrument was pleaded as a bar to the right. The Surrogate held that the instrument was not a contract, 171 Misc. 612, 13 N. Y. S. 2d 76; the Appellate Division held that it was, 258 App. Div. 596, 17 N. Y. S. 2d 316; and the New York Court of Appeals assumed, without deciding, that, apart from the effect of § 18 of the Decedent Estate Law, it was a binding contract, validly executed, and entitled to the protection of the Constitutional provisions here invoked. The Court of Appeals held, however, that "A wife cannot by agreement make the husband's right created by law immune from the right of the State to change the law which created the right nor waive in advance a right created for her benefit if the law does not permit such a waiver." Section 18 was held to confer a right of election upon Helena, and to be consistent with the requirements of the contract and due process clauses of the Federal Constitution. *Matter of McGlone*, 284 N. Y. 527, 533; 32 N. E. 2d 539, 542.

The reluctance of the New York Court of Appeals to decide the question whether the instrument in question did constitute a contract is quite understandable upon consideration of the record made up in this case. It appears from the face of the instrument that it was penned on stationery of the Savoy Hotel, London, by an unidentified scribe, and that the only signature was Helena's. The instrument does not recite mutuality of agreement. It recites no consideration, and none is

---

[8] Decedent Estate Law, § 2.

proved. It rather negatives the receipt of consideration, and the likelihood that marriage was such, by indicating that the parties had already exchanged promises to marry. Nor is there anything in text or context to help identify the source of the rights said to be. waived. No circumstances are adduced to show that either of the parties, about to marry in a foreign land, then had New York as a domicile or was contracting with reference to its laws, either present or future. The marriage record in evidence shows that his "residence at the time of marriage" was "Savoy Hotel, London" and hers was "The Beverleys, Thornbury Road, Isleworth." If either was domiciled elsewhere, there is nothing to indicate it. There is not even any showing that, at the time, either of the parties owned or had any expectation of owning property in New York. No apparent heed has been given to the usual rule that the law of the place of contracting determines questions of form, capacity to contract, necessity of consideration, and some aspects of the duty of performance. Both sides seem to have assumed, but for reasons that are not revealed, that the law of New York governs these questions. The niggardliness of the record may be due in some part to the restriction imposed on the right of a survivor to testify by § 347 of the New York Civil Practice Act, but this does not warrant an ill-informed guess by this Court as to the existence of a contract or its meaning under properly applicable rules of law.

When this Court is asked to invalidate a state statute upon the ground that it impairs the obligation of a contract, the existence of the contract and the nature and extent of its obligation become federal questions for the purposes of determining whether they are within the scope and meaning of the Federal Constitution, and for such purposes finality cannot be accorded to the views of a state court. *Douglas* v. *Kentucky,* 168 U. S. 488,

502; *Railroad Commission* v. *Eastern Texas R. Co.,* 264 U. S. 79, 86–87; *Coolidge* v. *Long,* 282 U. S. 582, 597; *U. S. Mortgage Co.* v. *Matthews,* 293 U. S. 232, 236; *Higginbotham* v. *Baton Rouge,* 306 U. S. 535, 538. In any view we might take of the constitutional questions urged here, we should not regard this record as an adequate basis for invalidating a state statute. But, lest a decision on this ground be taken as an invitation to further litigation in the New York courts and in this Court, we shall emulate the generosity shown by the Court of Appeals to the appellants and adopt its assumption as to the existence and nature of the contract for the purpose of disposing of the other questions urged.

Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction. *Mager* v. *Grima,* 8 How. 490; *United States* v. *Fox,* 94 U. S. 315; *United States* v. *Perkins,* 163 U. S. 625; cf. *Randall* v. *Kreiger,* 23 Wall. 137, 148. Expectations or hopes of succession, whether testate or intestate, to the property of a living person, do not vest until the death of that person.. Appellants cannot successfully attack the constitutionality of the new legislation which went into effect before McGlone's death, and became operative only as the result of his own voluntary act.

McGlone was free to consent to a cancellation or revocation of Helena's waiver, or to make a valid bequest to her of all or any of his property despite it. Further, he could free her of the restraints of her waiver by voluntarily committing an act to which the applicable law attached that consequence. This is what he did by executing the codicil of July 6, 1934, voluntarily taking

advantage of the privilege of further testamentary disposition offered by the laws of New York. So long as McGlone stood on the will made before the effective date of the legislation, the law allowed him to avail himself of the full force and effect of the waiver. Given his choice between adhering to any will made before September 1, 1930, or of bringing his estate under the new law, McGlone saw fit to execute a further testamentary document after that date and thus to bring the new legislation into operation as to himself, his estate and survivors. For the purpose of considering the application of the contract and due process clauses of the Federal Constitution, the case is as if he had made a voluntary legacy to his wife despite her waiver. If the obligation of the waiver suffered impairment, it was only because he exercised further testamentary privileges with a condition attached, and thereby brought those consequences unwittingly or intentionally upon himself and his estate.

The condition clearly was such as New York might, without restraint from the Federal Constitution, annex to the privilege of making a will under its law. Its effect was to continue as obligations of his estate social responsibilities which he had assumed during life,[4] unless they had been waived with required formality. The State could have conditioned any further exercise of testamen-

---

[4] The Court of Appeals has said of this legislation:

"After September 1, 1930, the absence of protection to the widow under prior laws gave way to the widow's right of election to take a specific part of the estate against the will. The inconsistency in our old law which compelled a man to support his wife during his lifetime and permitted him to cut her off with a dollar at his death, has given way to a new public policy which no longer permits a testator to dispose of his property as he pleases." *Matter of Greenberg*, 261 N. Y. 474, 478; 185 N. E. 704, 705.

When it enacted § 18 of the Decedent Estate Law, New York at the same time abolished for the future the ancient estates and rights of dower and curtesy, and made important changes in the rules as to descent and distribution of property.

tary power upon giving a right of election to the surviving spouse regardless of any waiver, however formally executed; and having recognized the binding effect of a waiver, it could condition that recognition upon acknowledgment, which was no doubt considered a desirable safeguard against casual, informal, or ill-considered abandonment of statutory protection, as well as against overreaching or fraud.

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the decision of this case.