**Estate of** Jacinto K. **Faisao,**
Juana K. Faisao, Administratrix,
Plaintiff/Appellant,
**v.**
Norman **Tenorio**, Roque A. Santos,
and Mary Ann Milne,
Defendants/Appellees.
Appeal No. 94-018
Civil Action No. 93-0976
April 13, 1995

---

[97] I do not doubt, however, that, together, these errors served to deny Cabrera his right to a fair trial.

Argued and Submitted March 14, 1995

Counsel for appellant: Joe Hill, Saipan (Hill & Sawhney).

Counsel for appellee Norman Tenorio: David W. Dooley, Guam (Moore, Ching, Boertzel, Civille, Dooley & Roberts).

Counsel for appellee Roque A. Santos: Vicente T. Salas, Saipan.

Counsel for appellee Mary Ann Milne: Michael W. Dotts, Saipan (Law Offices of Robert O'Connor).

BEFORE: VILLAGOMEZ and ATALIG, Justices, and MACK, Special Judge.

ATALIG, Justice:

Juana K. Faisao ("Juana"), the administratrix of the estate of Jacinto K. Faisao ("Jacinto"), appeals on behalf of Jacinto's estate ("Estate") from the grant of summary judgment in favor of defendants Norman Tenorio ("Tenorio"), Roque A. Santos ("Santos") and Mary Anne Milne ("Milne") (collectively "defendants"). We have jurisdiction pursuant to 1 CMC § 3102(a),[1] and

---

[1] The judgment did not dispose of the Estate's claim to all 25,647 square meters. *See* facts and procedural background, *infra.* However, all parties to the appeal argue that the judgment is final, and the Estate acknowledges that the "summary judgment . . . resolved all of the claims in dispute between the parties." Appellant's Brief at 2. Hence, this Court has jurisdiction under 1 CMC § 3102(a). *Cf. Georgia Ry. & Power*

hold that the trial court did not err in ruling that homestead property on Saipan, title to which was transferred to Jacinto's wife Hermana F. Faisao ("Hermana") under the Marital Homestead Title Act ("Marital Act"), does not belong in the Estate.

## ISSUE PRESENTED

 The issue on appeal is whether the trial court erred in ruling that the homestead property is not a part of the Estate.[2] Because this appeal is from a grant of summary judgment, our review is de novo. *See Cushnie v. Bank of Guam*, 4 N.M.I. 198, 199 (1994).

## FACTS AND PROCEDURAL BACKGROUND

On September 30, 1980, Jacinto, a Carolinian, received a quitclaim deed for property homesteaded during his marriage to Hermana.[3] A certificate of title was issued to him in his name for Agricultural Homestead 493 (Tract 21965) on June 7, 1983, by the Land Commission. Appellee Tenorio's Excerpts of Record at 11.

On April 13, 1983, Jacinto conveyed approximately 3,085 square meters of the property, Tract 21965-1 ("1"),

---

Co. v. Town of Decatur, 262 U.S. 432, 436-37, 43 S. Ct. 613, 615, 67 L. Ed. 1065 (1923); *Winthrop Iron Co. v. Meeker*, 109 U.S. 180, 183-84, 3 S. Ct. 111, 113-14, 27 L. Ed 898 (1883).

[2] The appellant states the issues for review as follows:

1. Whether the Commonwealth Superior Court erred in determining that at the time of the commencement of this action, title to the property was vested in defendants/appellees.
2. Whether the Commonwealth Superior Court erred in determining that plaintiff Estate of Jacinto K. Faisao has no right, title, lien or interest in the subject real property.

Appellant's Brief at 1.

[3] See Appellee Tenorio's Excerpts of Record at 19-20. Jacinto previously had been issued a certificate of compliance for Agricultural Homestead 493; see *id.* at 18. The land is described in the quitclaim deed to Jacinto as follows: "Tract No. 21965 containing an area of 28,732 square meters more or less as shown on the Division of Lands and Surveys Official Survey Plat Number 2065/74 dated June 11, 1975." *Id.* at 19.

to Milne by warranty deed.[4] *See* Declaration of Defendant Milne at Attachment 2, *Estate of Faisao v. Tenorio*, Civ. No. 93-976 (N.M.I. Super. Ct. filed Jan. 19, 1994).

Jacinto died intestate on January 4, 1985. He was survived by Hermana, three daughters, Juana, Dolores F. Mendiola, and Susana F. Faisao, and three sons, Juan F. Faisao ("Juan"), Marcelo F. Faisao and Francisco F. Faisao ("Francisco").

On May 22, 1985, Hermana filed a title transfer application for Tract 21965 under the Marital Act with the Land Commission. This application was granted and the Commission issued a certificate of title to Hermana on May 24, 1985, designating her as the fee simple owner of Tract 21965-R1 H-493, consisting of approximately 25,647 square meters.[5]

Hermana then subdivided the lot into separately enumerated Tracts 21965-2 ("2"), 21965-3 ("3"), 21965-4 ("4"), 21965-5 ("5"), 21965-6 ("6"), 21965-7 ("7"), 21965-8 ("8"), 21965-9 ("9"), 21965-10 ("10"), 21965-R/W ("R/W") and 21965-R4 ("R4"). Some of these tracts were conveyed to the defendants and Joseph C. Reyes ("Reyes") by either Hermana,[6] Francisco, Juan or Juana.[7]

---

[4] This transfer is not in dispute. *See* and *compare* note 5, *infra*, *with* note 8, *infra*, and accompanying text.

[5] See Appellant's Excerpts of Record at 21. The square footage reflects the initial 28,732 square meters held by Jacinto minus the 3,085 square meters he conveyed in 1983 to Milne.

[6] Specifically, Tracts 2, 3 and 4, consisting of, respectively, 1,375, 6,628, and 929 square meters, were conveyed to Milne by Hermana between August 1, 1985, and December 2, 1985. Declaration of Defendant Milne at Attachments 3-5 *in* Appellant's Excerpts of Record at 1-6. Hermana then conveyed Tract 5, consisting of approximately 9,787 square meters, by warranty deed to Tenorio on December 31, 1985. Appellee Tenorio's Excerpts of Record at 7-10. A second and distinct Tract 21965-2 ("2-1"), consisting of approximately 2,000 square meters, was conveyed to Santos by Hermana by both warranty deed and quitclaim deed on, respectively, May 24, 1985, and December 18, 1985. *Id.* at 22-25. The trial court noted that while the lot number for this lot conveyed to Santos and the number for one of those conveyed to Milne were the same, the coordinates on the deeds evince that they are separate lots.

[7] On November 15, 1991, Francisco conveyed Tract 7, consisting of 724 square meters, to Milne and Joseph C. Reyes ("Reyes") by warranty deed. A portion of Tract 8 and all of Tract 9 were conveyed to both Milne and Reyes by, respectively, Juana and Juan. The Tract 8 portion consists of approximately 404 square meters and Tract 9 consists of approximately 724 square meters. *See* Declaration of Defen-

In 1992, Juana petitioned for and received letters of administration for the Estate. *See In re Estate of Faisao*, Civ. No. 92-1320 (N.M.I. Super. Ct. Nov. 10, 1992) (order appointing administratrix). In the petition, Juana listed as an asset of the Estate the land transferred to Hermana by the Land Commission. *See* Petition for Letters of Administration, *In re Estate of Faisao*, Civ. No. 92-1320 (N.M.I. Super. Ct. filed Oct. 9, 1992).

On September 2, 1993, Juana filed a quiet title action against the defendants.[8] Santos and Tenorio answered the complaint on, respectively, September 23 and September 27, 1993. Santos alleged ownership of Tract 2-1 and counterclaimed, arguing that Jacinto conveyed Tract 2-1 to him. In his answer, Tenorio alleged ownership of Tract 5 under a conveyance from Hermana. On October 22, 1993, Milne answered the complaint alleging ownership of Tracts 1, 2, 3, 4, 6, 7, 8 and 9 pursuant to deeds issued by Hermana. See *supra* notes 6, 7.

Juana moved for summary judgment on December 10, 1993, alleging a violation of due process rights, deprivation of property rights and that the certificate of title contravened the rights of the heirs under the probate code.

On April 14, 1994, the trial court entered judgment in favor of each of the defendants, holding that the Estate had no rights, title, lien or interest in the homestead property. Specifically, the court held that title to Tracts 1, consisting of 4,477 square meters, 2, 21965-2-R1, consisting of approximately 1,000 square meters, 3 and 4 was vested in Milne; title to Tracts 6, 7, 8 and 9 was vested in Milne and Reyes; title to Tract 5 was vested in Tenorio, and title to Tract 2-1 was vested in Santos. Juana timely appealed.

## ANALYSIS

■ A quiet title action is one in which a plaintiff seeks a declaration from the court that an allegedly adverse interest in property is invalid. *See Aquino v. All Those Persons Having any Claim or Interest in Lot No. 069 D 05*, 3 CR 415, 418-19 (N.M.I. Trial Ct. 1988) *and Kasdon v. G.W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 995 (D. Md. 1982), *aff'd sub nom.*, *Kasdon v. United States*, 707 F.2d 820 (4th Cir. 1983). Where

the parties allege title from a common source, such as here,[9] the court may render judgment as to which party's claim is superior.[10] *Fetzer v. Bodcaw Co.*, 601 F.2d 356, 360-61 (8th Cir. 1979); *cf. Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992).

■ Generally, to show superiority of title each party must "plead or prove his or her own claim to the property in question." *Yokeno, supra.* Here, however, the parties agree that there are no material issues of fact in dispute and that the defendants' title claims are based on Hermana's receipt of title under the Marital Act.[11] Also, the validity of the transactions between Hermana and the defendants, apart from whether she held title to the property, is not in dispute, nor are the transfers by Juan, Juana and Francisco. Thus, the dispositive issue in determining superiority of title as between the Estate and defendants is whether title properly vested in Hermana.[12]

---

[9] The Estate acknowledges that the adverse interests purportedly held by the defendants were originally held by Jacinto, the same source from which it claims the property interest.

[10] Otherwise, the "'claimant, whether a Plaintiff or a counterclaiming Defendant, has the burden of persuasion . . . as to the strength of his or her own title' . . . if neither party carries its burden, the court must deny both parties relief by refusing to quiet title in the name of either party." *Alexander Hamilton Life Ins. Co. of America v. Government of Virgin Islands*, 757 F.2d 534, 541 (3d Cir. 1985) (citations omitted).

[11] As Hermana deeded all her interest in the disputed portions of the property to the defendants, she was not necessary to the action below. *See Chance v. Buxton*, 164 F.2d 341, 342 (5th Cir. 1947); *Jones v. Sturgis*, 199 P.2d 645, 647 (Colo. 1948).

[12] We note inconsistencies between the evidence in the record and the court's judgment with respect to the defendants Reyes and/or Milne's title to portions of the disputed property. For example: (1) there is no evidence in the record showing that Hermana deeded Tract 6 to Milne and Reyes; (2) the judgment appears to be erroneous with respect to the size of Tract 1, and includes not only an undisputed portion of the property deeded to Milne by Jacinto but the square meterage of a *superseding* deed conveying the *same* tract as well; (3) although the judgment vests title in Milne to Tract 21965-2-R1, of approximately 1,000 square meters, there is no reference to this tract by either number or size in the record; and (4) the judgment states that all of Tract 8 is in Milne and Reyes, while the record shows that Juana conveyed to them only a 404 square meter portion of this tract. Additionally, we are concerned with the failure to join Reyes as a defendant, given that his right to hold title to certain portions of the property was *at issue*. Although these inconsistencies are important to certain defendants and persons not named as parties to this action, they are

---

dant Milne at Attachments 6-8, *In re Estate of Faisao*, Civ. No. 93-0976 (N.M.I. Super. Ct. filed Jan. 19, 1994).

[8] She sought a declaration that all 25,647 square meters of the property transferred to Hermana were a part of the Estate. Complaint at 2, *In re Estate of Faisao*, supra note 7.

■ The Estate argues that title did not vest in Hermana because: (1) the Marital Act was impliedly repealed by the subsequent enactment of contrary language in the probate code, and, alternatively, (2) transfer of ownership to Hermana by the Land Commission constituted a violation of either Jacinto's or his heirs' due process rights.[13] For the following reasons we disagree and conclude that the trial court did not err in determining that title vested in Hermana. As between the Estate and defendants, the defendants' claims to title are superior. Further, we conclude that the due process claims are without merit.

## I. Marital Act neither Inconsistent with nor Repealed by Probate Code

Because Jacinto died after the effective date of the probate code, see 8 CMC § 2102 (effective Feb. 15, 1984), and the Marital Act, see 2 CMC § 4344 (effective Sept. 7, 1983), we examine each of these code provisions to determine whether, for purposes of probate, the homestead property is a part of the Estate.

■ "'[A] basic principle of [statutory] construction is that language must be given its plain meaning.'" *Commonwealth v. Hasinto*, 1 N.M.I. 377, 382 (1990) (citations omitted). Also, "[o]ne statutory provision should not be construed to make another provision [either] inconsistent or meaningless," *In re Estate of Rofag*, 2 N.M.I. 18, 29 (1991), or unconstitutional where open to a constitutional interpretation. *In re Seman*, 3 N.M.I. 57, 73 (1992). Finally, a statute will be an implied repealer of an earlier-enacted statute only where the two are in "'irreconcilable conflict'" and "an intent to repeal is 'clear and manifest.'" *In re North*, 16

---

immaterial to the issue of superiority of title as between the defendants and the Estate before this Court. Hence, we need not remand this matter for trial.

---

[13] Alternatively, the Estate argues that its due process rights were violated. We summarily reject this argument. Due process is a constitutional right against the improper deprivation of a property interest, see N.M.I. Const. art. I, § 5, to be brought by "[i]nterested person[s]," see 8 CMC § 2107(p) ("interested person" under probate code "includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others *having a property right in or claim against the estate of a decedent*") (emphasis added). An "estate" is merely a legal description of a decedent's assets. *See* 8 CMC §§ 2107(j), 2107(x). Even if we were to consider the due process claim of the Estate proper, any of its rights would derive from Jacinto, and we conclude that his due process rights were not violated by the Marital Act.

F.3d 1234, 1243 (D.C. Cir. 1994) (quoting *Rodriguez v. United States*, 480 U.S. 522, 524,107 S. Ct. 1391, 1392, 94 L. Ed. 2d 533, 536 (1987)).

### A. Probate Code and Marital Act Ambiguous with Respect to Limited Number of Homestead Properties

■ Under the probate code, any property in the estate of an intestate decedent would pass under the intestacy laws. *See* 8 CMC § 2901. Under these provisions, Jacinto's homestead property would pass to his wife for a life estate and be held by her as customary trustee with the remainder going to the eldest surviving daughter as customary trustee. *See* 8 CMC § 2905(a)(2).

■ However, under the Marital Act the surviving spouse of a homestead grantee may file a title transfer application with the Land Commission. 2 CMC § 4342. If the application is approved, the title is transferred to the surviving spouse. 2 CMC § 4343(b). Once title is transferred, the surviving spouse possesses "all right, title and interest in the property" previously held by the spouse. *Id.*; 2 CMC § 4344.

Read together, these statutory provisions do pose a patent ambiguity, see *Riley v. Public Sch. Sys.*, 4 N.M.I. 85, 89 (1994), as they appear to potentially conflict in the circumstances of this case. Under the probate code, homestead property would pass to the children with a life estate to the surviving spouse. Yet, the Marital Act allows a surviving spouse to apply for title to the homestead land.

■ Nonetheless, two statutory provisions may produce different results when applied to the same factual situation and not be in "irreconcilable conflict." *Radzanower v. Touch Ross & Co.*, 426 U.S. 148, 155, 96 S. Ct. 1989, 1993, 48 L. Ed. 2d 540, 547 (1976). They are irreconcilable only where "there is a positive repugnancy between them or . . . they cannot mutually coexist." *Id.*[14] Furthermore, a narrowly tailored and precise statute will not be repealed by a later more

---

[14] Where they "'are capable of co-existence, it is the duty of the courts . . . to regard each as effective.'" *Radzanower v. Touch Ross & Co.*, 426 U.S. 148, 155, 96 S. Ct. 1989, 1993, 48 L. Ed. 2d 540, 547 (1976) (quoting *Morton v. Mancari*, 417 U.S. 535, 551, 94 S. Ct. 2474, 2483, 41 L. Ed. 2d 290, 301 (1974)).

general statute unless it is clearly intended by the legislature. *See id.*, 426 U.S. at 153, 96 S. Ct. at 1992, 48 L. Ed. 2d at 546.[15]

 Because the terms of the probate code do not expressly repeal the Marital Act, and because the latter is narrowly tailored and potentially conflicts with the probate code with respect to only a limited number of homestead properties,[16] we will not presume that it was impliedly repealed by the probate code. Instead, we look to the legislative history of the statutes to determine the intent of the legislature.[17] *Cf. Radzanower*, 426 U.S. at 157-58, 96 S. Ct. at 1994-95, 48 L. Ed. 2d at 548-49 (Court looks to legislative history to determine if either intent to repeal or abandonment of previous policy indicated).

### B. Legislative History Indicates Marital Act Intended to Operate Independently of Probate Code

 This Court's objective, in interpreting statutes which reflect an ambiguity, is to "ascertain and give effect to the intent of the legislature." *In re Estate of Rofag*, 2 N.M.I. at 29 n.10 (quoting *Office of the Attorney General v. Cubol*, 3 CR 64, 73 (D.N.M.I. App.

Div. 1987))[18]; *see also Island Aviation, Inc. v. Mariana Islands Airport Auth.*, 1 CR 353, 371 (D.N.M.I. 1983) (citing *Heppner v. Alyeska Pipeline Serv. Co.*, 665 F.2d 868, 871 (9th Cir. 1981)).[19] In examining legislative history, congressional committee reports receive greater weight than less formal material such as floor debates. *See Island Aviation, Inc.*, 1 CR at 371-72.

 Additionally, we will not "impute to [the legislature] an intent to pass legislation that is inconsistent with the Constitution as construed by this [c]ourt." *United States v. X-Citement Video, Inc.*, ___ U.S. ___, 115 S. Ct. 464, 470, 130 L. Ed. 2d 372 (1994). Under our interpretation of due process as applied to the parties' arguments, the homestead property could have properly passed in only one of two ways at Jacinto's death: either to Hermana, upon compliance with the Marital Act, or to Jacinto's putative heirs, subject to confirmation by the probate court.

The available legislative history of the probate code is devoid of any reference to either the Marital Act or the definition of assets to be included in the estate of an intestate decedent. *See generally* H.R. Report No. 138, 3d N.M.I. Legis. (1983). However, the standing committee reports of the House and Senate regarding the Marital Act make it clear that the legislature intended all rights in the homestead property to vest in a surviving spouse.

The House standing committee stated that the purpose of the Marital Act "is to provide a fair and necessary legal process whereby a surviving spouse may transfer title or sell homestead property." H.R. Report No. 116, 3d N.M.I. Legis. (1983). It alluded to the probate process in noting that, at the time, a surviving spouse could not acquire title "without the expense of considerable time and money." *Id.* Testimony was cited noting that the Marital Act would "eliminat[e] the probate court process." *Id.* at 2 (citing testimony of Mr. T.G. Mattson, Micronesian Legal Services Corporation).

The Senate standing committee urged passage of the Marital Act in order to "further the purpose of Title 67 of the Trust Territory Code[] and to resolve the issue of title

---

[15] "'Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'" *Radzanower*, 426 U.S. at 153, 96 S. Ct. at 1992, 48 L. Ed. 2d at 546 (quoting *Morton*, 417 U.S. at 550-51, 94 S. Ct. at 2482, 41 L. Ed. 2d at 301).

[16] The Marianas Public Land Corporation is vested with the authority to determine the nature of the interest transferred to a homestead grantee. *See* COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA § 805(b), 48 U.S.C. § 1801 note, *reprinted in* CMC at B-116, and N.M.I. Const. art. XI, §§ 3, 4; Northern Marianas Constitutional Convention, *Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands* at 154 (Dec. 6, 1976). Hence, the legislature may change the nature of the interest to be transferred to include survivorship rights to pending homestead applicants, see 2 CMC § 4346, and new homestead applicants, see 2 CMC § 4347. The situation presented in this case, however, applies to a defined group: surviving spouses of grantees who received title to homesteaded property before the enactment of the Marital Act but who died after the effective date of the probate code.

[17] On appeal from a summary judgment, we may determine, as a matter of law, the legislature's intent. *See, e.g.*, *Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362, 369-70, 369 n.5 (1990).

[18] Generally, "'a statute should be so interpreted to give it effect . . . we must start with the presumption that [the] legislature intended to enact an effective law, and it is not to be presumed that the legislation is a vain effort, or a nullity.'" *Ada v. Sablan*, 1 N.M.I. 415, 429 n.18 (1990) (quoting *Levy v. Kimball*, 465 P.2d 580, 583 (Haw. 1970)).

[19] *See also Songao v. Commonwealth*, 4 N.M.I. 186, 190 n.18 (1994) ("court may look to legislative history for guidance where the enacted text may reasonably be read in two ways, or where no single path of meaning clearly appears").

transfer to surviving spouses of legitimate homesteaders." Sen. Report No. 149, 3d N.M.I. Legis. (1982).

From these reports, we conclude that the legislature intended that, prospectively, all new homesteads were to be held in joint tenancy with right of survivorship.[20] Furthermore, the pertinent legislative history evinces that the legislature intended that marital homestead property *bypass* the probate process and not be included in a decedent's estate for purposes of intestate succession. We also conclude that the legislature intended that unnamed grantee spouses be afforded succession rights to homestead property in fee simple upon compliance with the Marital Act.

These conclusions are further supported by the time frame within which both the Marital Act and probate code were enacted. It is presumed that a legislature intends "to enact an effective law." *Ada v. Sablan*, 1 N.M.I. 415, 429 n.18 (1990) (citation omitted). Here, both acts were under consideration at the same time and were passed by the *same* legislature. Furthermore, this legislature was aware of concerns raised about the succession rights of a decedent's children to homestead property under the Marital Act. *See* Letter from Jesus G. Villagomez, Executive Director, Marianas Public Land Corporation, to Pedro P. Tenorio, Governor (Aug. 9, 1983), H.R. Gov. Comm. No. 123, 3d N.M.I. Legis. at 2-3 (1983). It chose, nonetheless, to abandon a proposed amendment and leave the Marital Act intact. *See id.* at attachment 2.

Because of the limited nature and purpose of the Marital Act, recognition of its continuing effect, as intended by the legislature, will not undermine the otherwise comprehensive nature of the probate code. The two acts are not inconsistent and can be read to give effect to each. Thus, there is no basis to infer the repeal of the Marital Act by the probate code.

The next issue implicated by the Estate's arguments is whether the legislature may enact laws regarding the distribution of homestead property.

## II. Legislature Empowered to Enact Laws Altering Succession to Intestate Decedent's Property

The Estate argues that, under the Marital Act, the legislature improperly changed the nature of Jacinto's interest from one in fee simple to one in joint

tenancy with right of survivorship.[21] We disagree. The Marital Act had no effect on the property interest as held by Jacinto. He was free during his lifetime to convey, devise or otherwise alienate any portion or all of that interest. *See* 2 CMC § 4342(f).[22] Rather, the Marital Act designates the recipient of a decedent's homestead property.

The NMI Legislature is empowered to establish laws regulating the distribution of a decedent's assets. *Cf. Irving Trust Co. v. Day*, 314 U.S. 556, 562, 62 S. Ct. 398, 401, 86 L. Ed 452 (1942) ("Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation") (*quoted in* Appellee Tenorio's Brief at 12).[23] Not only may the legislature pass laws regarding the distribution of a decedent's assets, but it may do and has done so outside of the probate code.[24]

[20] For applications filed after the effective date of the Marital Act, both spouse's names are to be included and "each homestead shall be deemed to be held jointly with the right of survivorship." 2 CMC § 4347.

[21] Appellant's Brief at 7-8.

[22] A surviving spouse may file a title transfer application with the Land Commission on a form to be made available by the Land Commission, which provides at least the following information:

. . . .

(f) An affirmation that, to the knowledge of the surviving spouse, the marital homestead property has not been sold or otherwise conveyed to a third person.

2 CMC § 4342.

[23] "'A legislative enactment . . . changing the course of descent and distribution of property and the right to inherit or transmit property, is not an unlawful interference with or deprivation of vested rights, and, unless expressly inhibited by constitutional provisions, is to be deemed valid.'" *In re Estate of Millward*, 141 N.E.2d 462, 464-65 (Ohio 1957) (quoting *Ostrander v. Preece*, 196 N.E. 670, 671 (Ohio 1935), *appeal dismissed*, 296 U.S. 543, 56 S. Ct. 151, 80 L. Ed. 386 (1935)) (*quoted in* Appellee Tenorio's Brief at 12-13).

[24] There are several statutory provisions outside of the probate code under which assets of a decedent are distributed. *See, e.g.*, 1 CMC §§ 8348-8350 (retirement benefits distributed by statute where no named beneficiary); 4 CMC § 9309 (Worker's Compensation Law, providing specific distribution of benefits upon a covered death resulting from injury); 4 CMC § 7502(d) (life insurance proceeds to named beneficiary). These assets are not considered a part of a decedent's estate for purposes of the probate code where, otherwise, the payment of funds would normally be included in the estate.

## III. Title Vesting in Hermana not Violative of Due Process

■■■ The Estate argues that vesting of Jacinto's property interest, upon his death, in Hermana violated either Jacinto's or his heirs' due process rights. For the following reasons, we disagree.

First, Jacinto's interest in the homestead property, or his right to alienate that interest, was never retroactively impeded by the Marital Act. The Marital Act only affected the succession to the property. Indeed, his undisputed conveyance of a portion of the homestead land to Milne evinces this.

Second, Jacinto's children had no interest or potential interest in the property when held by Jacinto. *See Irving Trust Co.*, 314 U.S. at 562, 62 S. Ct. at 401 ("Expectations or hopes of succession, whether testate or intestate, to the property of a living person do not vest until the death of that person"). *Cf.* RESTATEMENT OF PROPERTY § 30 cmt. b (1936) ("A living person cannot have an heir"). An heir's rights are abridged by a change in law only where such rights to *vested* interests are retroactively altered. *Cf. In re Estate of Aldan*, 2 N.M.I. 288, 297-98 (1991) (dicta) (retroactive change in law affecting succession rights of illegitimate children, enacted after death of decedent and prior to probate of estate, would violate due process). That the Marital Act may have altered the expectations of the heirs in acquiring the property does not make it violative of due process. *Cf. United States v. Carlton*, ___ U.S. ___, 114 S. Ct. 2018, 2023, 129 L. Ed. 2d 22 (1994) (prospective change in tax law disturbing expectations not violative of due process).

Finally, the homestead property interest passed to Hermana, subject to her perfection of title under the Marital Act. Therefore, the disputed property is not part of the Estate and no interest in the property vested in Jacinto's heirs under intestate succession laws. Hence, the heirs had no interest of which they could have been unconstitutionally deprived. *See* N.M.I. Const. art. I, § 5; *cf. Sablan v. Iginoef*, 1 N.M.I. 190, 195, 204-205 (1990) (vested interests of heirs of intestate decedent must be affected to allege due process violation), *appeal dismissed sub nom., Sablan v. Manglona*, 938 F.2d 970 (9th Cir. 1991).[25]

---

[25] We also note that under Com. R. App. P. 44, any appellant intending to argue on appeal the unconstitutionality of a statute must notify the Attorney General's office of such intent. This was not done.

## CONCLUSION

Based on the foregoing, we hereby **AFFIRM** the trial court's summary judgment orders in favor of the defendants.