**David James Whitehorse KLAUSER, on behalf of, and as heir of, Annie Green-crow WHITEHORSE, Plaintiff,**

v.

**Bruce BABBITT, Secretary, Department of Interior, and his Agents, Assigns, and Successors in office, Defendant.**

No. 95–C–193–C.

United States District Court, W.D. Wisconsin.

March 1, 1996.

David James W. Klauser, Madison, WI, for David James Whitehorse Klauser.

Leslie Herje, Asst. U.S. Attorney, Madison, WI, for Bruce Babbitt.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action, plaintiff David James Whitehorse Klauser asks the court for 1) a declaration that the amended Indian Land Consolidation Act, 25 U.S.C. § 2201–2211, is unconstitutional under the Fifth Amendment's takings clause as the act applies to interests in real property owned by his deceased grandmother, Annie Greencrow Whitehorse, and 2) an injunction preventing the Department of the Interior from implementing the act with respect to those property interests. The case is presently before the court on the parties' cross motions for summary judgment. Jurisdiction is present, 28 U.S.C. § 1331, and plaintiff has standing to bring this suit. *Hodel v. Irving*, 481 U.S. 704, 711–712, 107 S.Ct. 2076, 2080–81, 95 L.Ed.2d 668 (1987) (heir can serve as decedent's representative for purpose of asserting the latter's Fifth Amendment rights under Indian Land Consolidation Act).

The material facts are not in dispute. The issue is whether the "escheat" provision of the amended Indian Land Consolidation Act, 25 U.S.C. § 2206, effected a "taking" without just compensation of Annie Greencrow

Whitehorse's undivided fractional interests in certain parcels of real property. Under this provision, small undivided fractional interests in Indian lands within a tribe's jurisdiction escheat to the tribe upon the death of the owner unless the interests are devised to any other owner of such interests in the same parcel.

I conclude that the amended act avoids the complete abrogation of rights of descent and devise that led the Supreme Court to hold the original act unconstitutional under the Fifth Amendment's takings clause. *Hodel v. Irving*, 481 U.S. 704, 107 S.Ct. 2076. Congress has the power to limit the beneficiaries of a devise and bar the heirs at law from taking by intestacy, so long as it does not abrogate all rights of descent and devise. Accordingly, defendant's motion for summary judgment will be granted and plaintiff's motion will be denied.

From the findings of fact proposed by the parties, I find that no genuine dispute exists with respect to the following material facts.

## UNDISPUTED FACTS

Annie Greencrow Whitehorse was plaintiff's grandmother and a Wisconsin Winnebago Indian. When she died without a will on December 4, 1990, the United States Department of the Interior, Office of Hearings and Appeals, held a hearing to determine her heirs and to settle her estate, which included undivided fractional interests of less than two percent in surface and mineral estates of four trust and restricted fee allotments on or near the Winnebago Indian Reservation in the state of Nebraska. The presiding administrative law judge applied the amended Indian Land Conservation Act and concluded that because the income generated from Whitehorse's interests would not exceed $100 in any of the five years following her death, her interests escheated to the Winnebago Tribe of Nebraska. Plaintiff petitioned for rehearing unsuccessfully, exhausted his administrative appeals within the Department of the Interior and filed this action on March 23, 1995.

## OPINION

During the last half of the nineteenth and the beginning of the twentieth centuries, Congress passed a series of acts designed to assimilate Indians into American society by breaking up tribal lands and allotting the resulting parcels to individual members of each tribe. *Solem v. Bartlett*, 465 U.S. 463, 466–67, 104 S.Ct. 1161, 1164, 79 L.Ed.2d 443 (1984). In order to "protect" the new landholders from deceptive white settlers who might attempt to purchase the land at a reduced rate, Congress directed that the tribal land be held in trust by the federal government for the benefit of the allottees. Felix S. Cohen, *Handbook of Federal Indian Law*, 131 (1982). During the trust period, which ended in 1902, the landowners were not allowed to convey or encumber their interests, 25 U.S.C. § 348; after it ended, they could pass their interests at death through wills or by intestate succession according to the laws of descent and partition in the state or territory where the land was located. *Id.* When the original allottees died and their heirs were determined, the heirs received joint undivided interests in the original allotment. Over several generations, the original allotments were fractionated into dozens or hundreds of undivided interests, making it difficult for individuals owning interests in a parcel to put their interests to productive use. *Hodel v. Irving*, 481 U.S. at 704, 708, 107 S.Ct. at 2077–79. Faced with the difficulties of multiple ownership, owners often agreed to sell or lease the whole parcel, usually to non-Indians. Cohen, *supra*, at 133. Far from helping the Indians, the allotment acts proved to be "an effective method of separating Indians from their lands." *Id.* at 136. From 1887 until 1934, Indian land holdings were reduced from 138 million acres to 48 million acres. *Id.* at 138.

Congress ended the allotment process in 1934 with the Indian Reorganization Act, 25 U.S.C. § 461–494, but passage of the act did not end the problem of fractionation. The Department of the Interior continued to bear the burden of administering the parceled lands and tracking each individual interest. *Hearings on H.R. 7902 Before the Senate Comm. on Indian Affairs*, 73d Cong., 2d Sess. 15–18 (1934). In an effort to ease this

burden, Congress passed the Indian Land Consolidation Act of 1983. Pub.L. 97–459, Tit. II, 96 Stat. 2519. Section 207 of that act (25 U.S.C. § 2206), provided as follows:

> No undivided fractional interest in any tract of trust or restricted land within a tribe's reservation or otherwise subject to a tribe's jurisdiction shall descendent [sic] by intestacy or devise but shall escheat to that tribe if such interest represents 2 per centum or less of the total acreage in such tract and has earned its owner less than $100 in the preceding year before it is due to escheat.

Congress amended this provision in 1984. Pub.L. 98–608, § 1(4), 98 Stat. 3171. In *Hodel v. Irving*, 481 U.S. 704, 107 S.Ct. 2076, the Supreme Court addressed the constitutionality of the original version of the land consolidation act. The case was brought by three members of the Oglala Sioux Tribe, all of whom either were or represented heirs or devisees of deceased members of the tribe who would have acquired fractional interests in tribal land by descent or devise but for the enactment of 25 U.S.C. § 2206. The Court began its opinion with an analysis of the plaintiffs' standing to sue, finding first that a case or controversy existed because "§ 207 has deprived appellees of the fractional interests they otherwise would have inherited. This is sufficient injury-in-fact to satisfy Article III of the Constitution." *Id.* at 711, 107 S.Ct. at 2080. The Court did not explain what seems to be a departure from its approach in earlier cases that heirs are not injured by changes in the laws of descent and devise that take effect before the death of the property owner, *see, e.g., Irving Trust Co. v. Day*, 314 U.S. 556, 562, 62 S.Ct. 398, 401, 86 L.Ed. 452 (1942) (heirs cannot successfully attack the constitutionality of legislation that affected testator's right to transmit his property and went into effect before testator's death; expectations of succession did not vest until death); *Jefferson v. Fink*, 247 U.S. 288, 294, 38 S.Ct. 516, 518, 62 L.Ed. 1117 (1918) ("[R]ules of descent [are] subject to change by the law-making power as to any land not already passed to the heir by the death of the owner. Not until the ancestor dies is there any vested right in the heir.") (citing *Cooley's Constitutional Limitations*

512 (7th ed.)). *See also* Daniel J. Kornstein, *Inheritance: A Constitutional Right?*, 36 Rutgers L.Rev. 741, 745–46 (1984) (concluding that there is no constitutional right to inheritance: "Once death occurs ... ownership of property is the very question at issue: the decedent no longer exists, and the heir never owned the property claimed to have been 'taken.' "). The Court concluded that prudential standing concerns were met: appellees were the proper parties to assert the property rights of the decedents. Ordinarily, the Secretary of the Interior is charged by statute with the responsibility of pursuing the surviving claims of deceased Indians with trust property, but he could not do so in this instance because he was defending the statute under attack.

Turning to the merits of the claim, the Court acknowledged the broad authority of Congress to regulate the descent and devise of Indian trust lands, the extraordinary problem of fractionation of Indian lands, and the government's "considerable latitude in regulating property rights in ways that may adversely affect the owners." *Hodel*, 481 U.S. at 712, 107 S.Ct. at 2081. Acknowledging the difficulty of developing any "set formula" for determining when economic injuries should be compensated by the government pursuant to the Fifth Amendment, the Court utilized the analytic framework employed in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). First, the Court considered the economic impact upon the property owners. In the Court's view, the value of the plaintiffs' interests was not de minimis or trivial (the escheatable interests in one estate amounted to $2,700), and in any event, the "right to pass on valuable property to one's heirs is itself a valuable right." *Id.* at 715, 107 S.Ct. at 2083. The second *Penn Central* factor is interference with a property owner's investment-backed expectations; the Court agreed that it was dubious the decedents had any such expectations. Moreover, the Court found "something of an 'average reciprocity of advantage,' " (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922)), "to the extent that owners of escheatable inter-

ests maintain a nexus to the Tribe" and thereby benefit from the consolidation of tribal lands. *Id.* at 715, 107 S.Ct. at 2082–83. Finally, the Court considered the character of the governmental action and concluded that it was "extraordinary," *id.,* at 716, 107 S.Ct. at 2083, because the regulation amounted to the total abrogation of the right to pass on to one's heirs a particular type of property.

The Court observed that "the right to pass on property—to one's family in particular— has been part of the Anglo–American legal system since feudal times." *Id.* When this right is abolished completely, it amounts to an unconstitutional taking, notwithstanding the possibility that the owners could control the disposition of their interests on death through inter vivos transactions such as revocable trusts. Given the nature of the property, such alternatives are "not an adequate substitute for the rights taken." *Id.*

Until *Hodel* was decided, the leading case on the right of transmission of property at death was *Irving Trust,* 314 U.S. 556, 62 S.Ct. 398, in which the Supreme Court addressed the constitutionality of a New York statute giving the surviving spouse the right of election either to take under the will or to take his or her intestate share in the estate. In response to the challenge that the statute was invalid because it impaired the right to contract and effected a taking of property without just compensation, the Court declared that "[r]ights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction." *Id.* at 562, 62 S.Ct. at 401.

The Supreme Court did not repudiate *Irving Trust* when it decided *Hodel.* To the contrary, it cited the case in reaffirming "the continuing vitality of the long line of cases recognizing the States', and where appropriate, the United States', broad authority to adjust the rules governing the descent and devise of property without implicating the guarantees of the Just Compensation Clause." *Hodel,* 481 U.S. at 704, 107 S.Ct. at 2077. The difference in *Hodel* was "the fact that both descent and devise are completely abolished" by the original Indian Land Consolidation Act. *Id.* at 717, 107 S.Ct. at 2084. To emphasize this point, the Court suggested that Congress could constitutionally minimize the fractionation problem by abolishing the descent of fractional interests by intestacy, forcing the owners of such interests to designate an heir if they wish to avoid escheat to the tribe. *Id.* at 718, 107 S.Ct. at 2084. In addition, the government could prevent owners of fractional interests from further subdividing them on pain of escheat. *Id.*

In *Hodel,* the Court declined to address the constitutionality of the amended Indian Land Consolidation Act. The plaintiffs' decedents had all died in 1983 while the original act was in effect and were subject to the provisions of that act, making it unnecessary for the Court to consider the amended act, which differs from the original in three material ways. First, the definition of fractional interests covered by the law and therefore subject to escheat is narrowed significantly. 25 U.S.C. § 2206(a). As in the original act, land is subject to the act if it represents two percent or less of the total acreage in the tract. Under the original act, however, land would have been subject to the act if it had not earned its owner $100 or more in the year preceding death; under the amended act, the land must be shown to be incapable of earning $100 in any one of the five years following the death of the decedent. (If the land has not earned $100 in any one of the five years preceding death, a rebuttable presumption exists that it would not earn $100 in any one of the five succeeding years.)

Second, the amended act permits a devise of fractional interests "to any other owner of an individual fractional interest in such parcel," § 2206(b), thus making limited devise rights available in situations in which devise would help consolidate the parcel. Finally, the amended act provides that the escheat provision may be superseded by a tribal scheme approved by the Secretary of the Interior, but directs the secretary not to approve any plan that "fails to accomplish the purpose of preventing further descent or

fractionation of such escheatable interests." 25 U.S.C. § 2206(c).

Only one federal court of appeals has considered the constitutionality of the amended act. In *Youpee v. Babbitt*, 67 F.3d 194 (9th Cir.1995), the Court of Appeals for the Ninth Circuit held § 2206 unconstitutional, finding that the amended act continues to abrogate an owner's ability to pass his interests to heirs by descent or devise when his heirs do not possess interests in the same parcel. *Id.* at 200. The court relied heavily upon language from *Hodel*, 481 U.S. 704, 107 S.Ct. at 2077, stating that the right to transfer land to one's heirs is "itself a valuable right." *Youpee*, 67 F.3d at 200 (quoting *Hodel*, 481 U.S. at 715, 107 S.Ct. at 2082–83).

 Plaintiff contends that this court is bound by *Youpee* through the principle of collateral estoppel. I will give *Youpee* due consideration as persuasive authority, but plaintiff's suggested treatment of that case is clearly in error. Collateral estoppel protects litigants from having to relitigate an identical issue with the same party or his privy. Since plaintiff was not a party in the *Youpee* case, I assume he intends to assert that the United States is bound by the closely related doctrine of offensive non-mutual collateral estoppel, which can be raised by a litigant not a party to the previous litigation to prevent a defendant from raising as a defense an issue that the defendant has already litigated unsuccessfully against another party. Essentially, plaintiff wants to prevent the United States from defending the constitutionality of the amended land consolidation act. Offensive collateral estoppel is the complement of defensive non-mutual collateral estoppel, which protects a defendant from having to defend against claims that the plaintiff has already had one full and fair opportunity to litigate and has lost. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979) (citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971)). The two situations are treated differently because defensive collateral estoppel is thought to promote judicial economy by giving a plaintiff a strong incentive to join all defendants in one action, whereas offensive collateral estoppel creates the opposite incentive. *Id.* at 329–330, 91 S.Ct. at 1443. Courts have discretion to apply offensive collateral estoppel in situations in which its use would not be unfair to a defendant. *Id.* at 331, 91 S.Ct. at 1444. Such situations do not include cases in which the federal government is the defendant. Preventing the government from defending against a suit

> would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.

*United States v. Mendoza*, 464 U.S. 154, 160, 104 S.Ct. 568, 572, 78 L.Ed.2d 379 (1984) (citations omitted). Nothing in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), cited by plaintiff, changes this result because that case involved defensive collateral estoppel. In *Montana*, the United States brought a federal court challenge to a Montana state tax that applied to contractors of public, but not private projects. The same tax had been upheld in the Montana state courts in a suit brought by a public contractor. The Supreme Court held that the federal government was estopped from suing in federal court because the identical issues had been decided adversely to it in the state court litigation in which the public contractor plaintiff was controlled by the federal government. In these circumstances, traditional principles of issue preclusion barred the second lawsuit.

Bearing in mind the Supreme Court's refusal to disavow the earlier cases in which it has upheld the rights of the state and federal governments to change the rules for descent and devise, *see, e.g., Irving Trust*, 314 U.S. 556, 62 S.Ct. 398; *Jefferson v. Fink*, 247 U.S. at 294, 38 S.Ct. at 518 (customary for Congress to subject allotted Indian lands to local laws of descent; like any other rules of descent those governing Creek allotments are subject to change by legislature as to any

land not already passed to the heir by death of owner); *Mager v. Grima*, 49 U.S. (8 How.) 490, 493–94, 12 L.Ed. 1168 (1850) (finding no constitutional objection to Louisiana's tax on legacies to aliens; every state and sovereignty possesses power of regulating manner and term upon which property may be transmitted and may deny privilege of transmitting property to alien by will or by inheritance altogether), I believe that *Hodel* should not be read broadly to invalidate all efforts by Congress to minimize and reduce fractionation by limiting descent and devise. Rather, the case should be read as an attempt to preserve the holding in *Irving Trust*, 314 U.S. 556, 62 S.Ct. 398, while making clear that total and "extraordinary" restrictions will not pass muster.

Against this background, I will employ the *Penn Central* analysis applied by the Court in *Hodel* to the amended act. Commentators have argued persuasively that the Court applied the *Penn Central* test improperly in *Hodel, see* Ronald Chester, *Essay: Is the Right to Devise Property Constitutionally Protected?—The Strange Case of Hodel v. Irving*, 24 Sw.U.L.Rev. 1195 (1995); Douglas W. Kmiec, *The Original Understanding of the Takings Clause is Neither Weak nor Obtuse*, 88 Colum.L.Rev. 1630, 1664 (1988) (*Penn Central* factors were intended to calculate compensation after court has found a taking, not to determine whether taking has occurred), but the Court's opinion suggests that lower courts are not free to ignore the *Penn Central* factors in deciding takings cases.

■ The first prong of the *Penn Central* test, the relative economic impact of the act upon those owning fractionated interests, produces the same results whether applied to the original § 2206 or the amended version of § 2206. Although for the most part, the property interests are small, they are not de minimis and can be "substantial." In *Hodel*, 481 U.S. 704, 107 S.Ct. at 2077, the Court was concerned that the original act allowed "potentially valuable" interests to escheat to the tribe merely because they had not produced $100 in income in a given year. Congress attempted to cure this concern by narrowing the definition of interests subject to

escheat. The amended statute applies only to land that could not produce $100 in income in any one of the five years following the death of the owner. 25 U.S.C. § 2206. This change lessens the economic impact of the escheat provision significantly by making it less likely that a potentially valuable interest might escheat simply because it failed to produce a minimal amount of income during one particular year. Therefore, the amendment makes it far more unlikely that a potentially valuable interest will escheat because of a random year of reduced income. In addition, the relative economic impact of the act is slight in comparison to that of many governmental regulations. However, *Hodel* makes clear that the value of these property interests to their owners cannot be labeled de minimis. Thus, the amended act satisfies the first prong of the *Penn Central* analysis more adequately did the original act, but this does not end the inquiry.

The amendments do not change the application of the second factor of the *Penn Central* test to the act. In *Hodel*, any claimed interference with reasonable investment backed expectations provided only "dubious" support for the original act's unconstitutionality; few owners could have any legitimate investment backed expectations in their property interests because most of these owners had acquired the property by gift, descent or devise rather than by purchase for investment. *Id.* at 715, 107 S.Ct. at 2082–83.

After examining the first two factors in *Hodel*, the Court acknowledged that it "might well find [§ 2206] constitutional" if not for the third element of the analysis: the character of the government action. *Hodel*, 481 U.S. at 716, 107 S.Ct. at 2083. It is this third factor that is critical to this case as well. In *Hodel*, the Court found the act's complete abrogation of the right to pass interests by descent or devise to one's heirs "extraordinary." *Id.* However, the amended act is far less extraordinary. Whereas the original act barred owners of qualified interests from devising their property interests, the amended provision allows owners to designate beneficiaries when that designation contributes to solving fractionation problems.

Plaintiff contends that the limited devise rights offered by the amended act do not make the statute constitutional because the statute has the practical effect of making transfer to one's heirs extremely difficult. The *Hodel* decision does contain references to the value our society places on the ability to pass property to one's lineal descendants but it also holds explicitly that the regulation of descent and devise remains within the exclusive prerogative of the legislature, so long as the legislature does not go so far as to ban all descent and devise. Although a complete ban on descent with limitations on devise might be restrictive, it cannot be characterized as extraordinary. *See Hodel*, 481 U.S. at 712, 107 S.Ct. at 2081 (consolidation of Indian lands is public purpose of high order). Indeed, the Court suggested explicitly that Congress could abolish the descent of fractionated interests and force the owners of such interests to designate an heir if they wished to avoid escheat to the tribe. *Id.* at 718, 107 S.Ct. at 2084. In citing *Irving Trust*, 314 U.S. 556, 62 S.Ct. 398, the Court recognized that it is not unusual for legislatures to impose valid restrictions on the devise of property. For example, the Uniform Probate Code provides elective rights to surviving spouses, U.P.C. § 2–403; and inheritance taxes impose considerable practical restrictions on any individual's ability to devise property. *See generally,* Chester, *supra,* at 1195 (discussing implications of *Hodel* ). *Hodel* does not suggest that individuals have a constitutional right to pass property to lineal descendants in all circumstances. Rather, the case stands for the proposition that the broad authority of Congress to regulate the descent and devise of Indian lands goes too far when both descent and devise are eliminated completely.

■ Plaintiff argues that the language in *Hodel*, 481 U.S. at 718, 107 S.Ct. at 2084, regarding the propriety of abolishing descent and providing only a limited right of devise is merely dictum and should not be followed by this court. That alone is not a good reason not to follow relevant Supreme Court pronouncements. When a Supreme Court decision is recent and provides a framework within which lower courts may decide cases, dictum in that decision often "provides the best, though not an infallible, guide to what the law is … it will ordinarily be the duty of a lower court to be guided by it." *Reich v. Continental Cas. Co.*, 33 F.3d 754 (7th Cir. 1994). Given the arguably remarkable nature of the Court's departure in *Hodel* from the holding in *Irving Trust*, 314 U.S. 556, 62 S.Ct. 398, one can make a strong case for reading *Hodel* as representing the farthest extension of the Court's willingness to strike down a legislative attempt to limit the transmission of property at death for the purpose of advancing important social goals.

Plaintiff emphasizes that when the *Hodel* case was before the Court of Appeals for the Eighth Circuit, that court held both the original and the amended escheat provisions of the Indian Land Consolidation Act unconstitutional. *Irving v. Clark*, 758 F.2d 1260 (8th Cir.1985), *aff'd sub nom. Hodel v. Irving*, 481 U.S. 704, 107 S.Ct. 2076. The Supreme Court expressed no opinion on the constitutionality of the amended version of § 2206, concluding that the Eighth Circuit's analysis of the amended provisions was "at best, dicta." *Hodel*, 481 U.S. at 710 n. 1, 107 S.Ct. at 2080 n. 1. In arguing that this court should follow the court of appeals' ruling on the amended act, plaintiff fails to acknowledge its limited significance after the Supreme Court's ruling. In *Hodel*, the Supreme Court indicated that Congress could establish rules of intestacy that forced owners of fractional interests to designate an heir to prevent escheat of the interest to the tribe; by contrast, the court of appeals held the provisions unconstitutional because they deprived the plaintiffs' decedents of rights vested in them as allottees of the original Sioux who were the beneficiaries of the Sioux land act. According to the court of appeals, those individual Sioux had "enforceable expectations" that the power to dispose of their property at death was part of the rights they received in return for relinquishment of their claims to former tribal lands. *Irving v. Clark*, 758 F.2d at 1268–69. In light of the obvious differences in analysis applied by the Supreme Court and the court of appeals, I am not persuaded that the court of appeals' analysis of the amended act offers any guidance in determining the act's constitutionality.

Plaintiff renews his argument that the Ninth Circuit's holding in *Youpee*, 67 F.3d 194, should be followed in this case, even if it has no precedential or collateral estoppel effect. In *Youpee*, the decedent was an enrolled member of the Sioux and Assiniboine Tribes of the Fort Peck Reservation who possessed several undivided interests in allotted trust land on various reservations during his lifetime. His children and potential heirs brought suit challenging the Interior Department's determination that his interests would escheat to various tribes under the amended version of the Indian Land Consolidation Act. The court of appeals concluded that the amended act was constitutionally inadequate because it continued to restrict the descent and devise of land by Indian landowners who do not have an heir owning an interest in the parcel. "The amended statute continues to completely abolish one of the sticks in the bundle of rights for a class of Indian landowners." *Id.* at 200.

In my view, *Youpee* gives undue weight to the Court's statements in *Hodel* concerning the importance of the right to pass on property to one's heirs and too little weight to other aspects of the opinion. First, as I have discussed previously, there is the Court's emphasis on "the continuing vitality" of the cases recognizing the sovereign's right to adjust the rules governing descent and devise of property. I read this as a caution against reading *Hodel* as carving out an entirely new right to pass on property to one's heirs free of governmental regulation. Second, there is the Court's apparent concern with the lack of fit between the means chosen by the legislature and the end it attempted to achieve, as evidenced by its observation that a major problem with the original statute is that it "effectively abolishes both descent and devise of [fractionated] property interests even when the passing of the property to the heir might result in consolidation of property—as for instance when the heir already owns another undivided interest in the property." *Hodel*, 481 U.S. at 716, 107 S.Ct. at 2083. The amended statute does not suffer from this absence of a means-end nexus. It permits the devise of interests to heirs who already own an undivided interest in the same property.

Plaintiff maintains that the amended act is unconstitutional because it deprives incompetents and others who lack testamentary capacity of the opportunity to transmit their interests to their heirs by virtue of the bar on the right of descent. There is a threshold question whether plaintiff can raise such an issue without alleging that his decedent would have come within the class of persons affected by that bar. Plaintiff does not assert that Greencrow Whitehorse lacked testamentary capacity and has offered no evidence that she was limited to passing her property by the right of descent. Even if plaintiff can raise the issue, he has failed to show that such a bar would make the amended statute unconstitutional. The Supreme Court's endorsement of the possibility of abolishing descent by intestacy as a means of minimizing further fractionation suggests strongly that such legislative action would be upheld even if it worked a hardship on persons lacking testamentary capacity.

Finally, I note that plaintiff cannot contend that his grandmother lacked adequate notice in which to arrange for the consolidation of her fractional interests in order to avoid escheat. This lack of notice was the concern expressed by Justice Stevens in his concurring opinion in *Hodel*; the original statute contained no "grace period." *Hodel*, 481 U.S. at 733, 107 S.Ct. at 2092 (appellants' decedents had nothing "approaching a reasonable opportunity to arrange for the consolidation of their respective fractional interests with those of other owners"; " 'the time allowed is manifestly so insufficient that the statute becomes a denial of justice.' ") (Stevens, J., concurring) (quoting *Wilson v. Iseminger*, 185 U.S. 55, 63, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902)). *Cf. Irving Trust*, 314 U.S. at 562–63, 62 S.Ct. at 401–02 (testator had opportunity to arrange his affairs so as to avoid operation of law that gave surviving spouse right of election to take against the will). The decedents in *Hodel* had less than six months between the passage of the original land consolidation act and their deaths in which to arrange their affairs. By contrast, Annie Greencrow Whitehorse had six years.

## ORDER

IT IS ORDERED that the motion for summary judgment of defendant Bruce Babbitt, Secretary, Department of Interior, is GRANTED and the motions for summary judgment and preliminary injunction of plaintiff David James Whitehorse Klauser are DENIED.